**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **RYLEIGH STARLING,** *individually and on behalf of a class of all persons and entities similarly situated,* §§§§ | |
| **Plaintiff,** § | |
| § | **CIVIL ACTION NO. 3:26-cv-01039- B** |
| **v.** §§ | |
| **WHAT IF HOLDINGS LLC d/b/a C4R MEDIA CORP.,** §§§ | |
| **Defendant.** § | |

**MEMORANDUM IN SUPPORT OF DEFENDANT WHAT IF HOLDINGS, LLC'S
MOTION TO DISMISS PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>**

**Table of Contents**

**Page**

I.    INTRODUCTION ............................................................................................................ 1

II.   FACTUAL BACKGROUND......................................................................................... 2

    A.   Overview of the TCPA ...................................................................................... 2

    B.   Summary of Complaint...................................................................................... 3

III.   LEGAL STANDARD.................................................................................................... 4

IV.   ARGUMENT................................................................................................................ 5

    A.   The First Cause of Action Must be Dismissed Because The Private Right of Action Under § 227(c)(5) Applies only to Telephone Calls................................................ 5

       1.   The ordinary public meaning of "telephone call" as used in Section 227(c)(5) did not include written messages at the time it was enacted............................................... 5

       2.   The structure of Section 227(c) and its surrounding provisions confirms that its private right of action does not extend to text messages...................................................... 9

       3.   Cases to the contrary are not persuasive ...................................................... 12

    B.   The Second Cause of Action Must be Dismissed Because the Alleged Violations Arise Under Regulations for Which there is no Private Right of Action ........................................... 13

V.   CONCLUSION........................................................................................................... 15

## Table of Authorities

**Cases:**                                                                                    **Page(s)**

*Alvarez v. Fiesta Nissan, Inc.*,
  No. 7:25-CV-00343, 2026 WL 202930 (S.D. Tex. Jan. 26, 2026)...........................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................4, 5

*Bostock v. Clayton Cnty., Ga.*,
  590 U.S. 644 (2020).................................................................................................................5

*Bradford v. Sovereign Pest Control of TX, Inc.*,
  167 F.4th 809 (5th Cir. 2026) .................................................................................................6

*Braver v. Clear Sky Fin., LLC*,
  No. 5:22-cv-00710, 2023 WL 12250902 (W.D. Okla. Jan. 3, 2023) ................................. 14-15

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016)...............................................................................................................12

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003).................................................................................................................11

*Davis v. CVS Pharmacy, Inc.*,
  797 F. Supp. 3d 1270 (N.D. Fla. 2025)..................................................................................8, 9

*Davis v. Mich. Dep't of Treasury*,
  489 U.S. 803 (1989).................................................................................................................9

*Dobronski v. SunPath Ltd.*,
  No. 2:19-cv-13094, 2020 WL 8840311 (E.D. Mich. July 27, 2020).......................................15

*El Sayed v. Naturopathica Holistic Health, Inc.*,
  No. 8:25-cv-00846-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) .......................9

*Facebook, Inc. v. Duguid*,
  592 U.S. 395 (2021)..........................................................................................................12, 13

*Gozlon-Peretz v. United States*,
  498 U.S. 395 (1991)...............................................................................................................10

*Griffin v. American-Amicable Life Ins. Co. of Tex.*,
  No. 6:24-cv-00243-MC, 2024 WL 4333373 (D. Or. Sept. 27, 2024) ....................................15

*Irvin v. Sonic Indus. Servs.*,
   LLC, No. 3:25-cv-00242-LMM, 2026 WL 1098403 (N.D. Ga. Apr. 20, 2026) ......................9

*James v. Smarter Contact, Inc.*,
   No. 8:25-cv-1657-KKM-SPF, 828 F. Supp. 3d 1367 (M.D. Fla. Mar. 31,
   2026) ....................................................................................................................................9

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) ........................................................................................ 4-5

*King v. Burwell*,
   576 U.S. 473 (2015)...........................................................................................................9, 10

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369 (2024)...............................................................................................5, 6, 12, 13

*Lopresti v. Nouveau Essentials Marketing, LLC*,
   No. 5:25-cv-00282-CEM-PRL, 2026 WL 964758 (M.D. Fla. Feb. 26, 2026) .........................9

*McDermet v. John C. Heath, Attorney at Law, PLLC*,
   No. 1:17-12327-FDS, 2018 WL 627371 (D. Mass. Jan. 30, 2018) .........................................14

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*,
   606 U.S. 146 (2025)...........................................................................................................12

*Meyer v. Cap. Alliance Grp.*,
   No. 3:15-cv-02405-WVG, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017).......................... 14-15

*Pulsifer v. United States*,
   601 U.S. 124 (2024)...........................................................................................................9

*Radvansky v. 1-800-Flowers.com, Inc.*,
   No. 1:25-CV-2811-TWT, 2026 WL 456919(N.D. Ga. Feb. 17, 2026) ...................................9

*Russello v. United States*,
   464 U.S. 16 (1983).............................................................................................................10

*Steidinger v. Blackstone Med. Servs.*,
   No. 25-2398, 2026 WL 2028517 (7th Cir. July 14, 2026)...........................................9, 12, 13

*Stockdale v. Skymount Prop. Grp.*,
   LLC, 825 F. Supp. 3d 622 (N.D. Ohio Mar. 3, 2026) ........................................................9, 12

*Tex. Brine Co., L.L.C. v. Am. Arbitration Ass'n*,
   955 F.3d 482 (5th Cir. 2020) .............................................................................................6

*Weingrad v. DaBella Exteriors, LLC*,
   No. 3:25-cv-396-SI, 2026 WL 496609 (D. Or. Feb. 23, 2026) ..............................................14

*Wisconsin Cent. Ltd. v. United States*,
    585 U.S. 274 (2018)............................................................................................................10

*Ysleta Del Sur Pueblo v. Texas*,
    596 U.S. 685 (2022)............................................................................................................11

**Statutes, Rules & Regulations**

47 C.F.R. § 64.1200(c).............................................................................................................4

47 C.F.R. § 64.1200(d) ............................................................................................................2

47 C.F.R. § 64.1601(e).................................................................................................1, 4, 14, 15

47 U.S.C. § 227(a) ...................................................................................................................1

47 U.S.C. § 227(b) ........................................................................................................2, 12, 14

47 U.S.C. § 227(c)(1)..........................................................................................................2, 10

47 U.S.C. § 227(c)(5)....................................................................................................... *passim*

47 U.S.C. § 227(d) ...........................................................................................1, 3, 5, 14, 15

47 U.S.C. § 227(e)(8)(A)-(B) ............................................................................................3, 11

Fed. R. Civ. P. 12(b)(6).......................................................................................................1, 4

**Other Authorities**

Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal
    Texts* (2012) ...................................................................................................................9

Dissenting Statement of Commissioner Ajit Pai, Rules & Regulations
    Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd.
    7961 (2015)..................................................................................................................2

H.R. Rep. No. 102-317 (1991)..............................................................................................2

Mark Landler, *New Weapons, New Rivals in Wireless Phone Competition*, N.Y.
    TIMES, Nov. 14, 1996................................................................................................8

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1211 (10th ed. 1993) ........................................6

Omnipoint User Guide, Ericsson CF337/CH337 (1996), at 34, available at
    https://dn790000.ca.archive.org/0/items/manualsonline-id-0e328daa-4808-
    4fcb-8777-ef01e90eb66b/0e328daa-4808-4fcb-8777-ef01e90eb66b.pdf (last
    visited July 15, 2026)................................................................................................8

OXFORD ENGLISH DICTIONARY 728 (2d ed. 1989)..............................................................................7

S. Rep. No. 102-178 (1991)...........................................................................................................2

Truth in Caller ID Act of 2009, Pub. L. No. 111-331, 124 Stat. 3572, 3572–75
    (2010)...............................................................................................................................3

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1991) ..............................................................7

Defendant What If Holdings, LLC ("What If"), by and through its undersigned counsel, respectfully moves this Court for dismissal of Plaintiff Ryleigh Starling's Complaint under Federal Rule of Civil Procedure 12(b)(6) because it fails to state a valid claim for relief.

## I.    **<u>INTRODUCTION</u>**

What If is a digital marketing company that helps advertisers connect with customers based on their inquiries. Plaintiff alleges that she received at least two dozen text messages from What If that violated the do-not-call and caller-identification regulations promulgated under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

The First Cause of Action—alleging that the text messages violated the do-not-call regulations—fails because Plaintiff only alleges receiving text messages, and Section 227(c), under which these regulations were promulgated, provides a cause of action only to a person who has received more than one "telephone call." When Congress enacted the TCPA in 1991, the ordinary public meaning of "telephone call" involved a communication through the reproduction of sound or voice. As today, a written message was not a "telephone call." Neither Congress in 1991, nor any English speaker since, has understood the receipt of a "telephone call" to mean the receipt of a written message. Because Plaintiff has only alleged receipt of written messages, and not a single telephone call, the First Cause of Action fails.

The Second Cause of Action—alleging that the text messages violated the caller-identification regulations—fails because Section 227(d), under which these regulations were promulgated, provides no private right of action at all.

Both Causes of Action fail as a matter of law and thus this case should be dismissed in its entirety with prejudice as amendment would be futile.

## II.    FACTUAL BACKGROUND

### A.    Overview of the TCPA

The TCPA, which former FCC Chairman Ajit Pai described as having "become the poster child for lawsuit abuse," was enacted in 1991 to curb use of telephone technology that risked tying up hospital and emergency responder telephone lines, intruding into the home with interruptions requiring immediate attention, and interfering with businesses by occupying their fax machine lines and causing them to incur costs through printing unwanted advertisements. Dissenting Statement of Commissioner Ajit Pai, Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961, 8073 (2015); *see* H.R. Rep. No. 102-317, at 2 (1991); S. Rep. No. 102-178, at 2 (1991).

The TCPA includes a variety of provisions that regulate telephone technology. Section 227(a) sets forth certain definitions, including, *inter alia*, the term "telephone solicitation," which is defined to encompass both "a telephone call or message."

Section 227(b) regulates the use of certain automated telephone equipment, including by generally prohibiting the use of such equipment to call certain telephone lines (§ 227(b)(1)(A)-(B)); placing restrictions on sending unsolicited advertisements to fax machines lines (§ 227(b)(1)(C)); and providing the FCC with authority to prescribe implementing regulations (§ 227(b)(2)).

Section 227(c)(1) of the TCPA directs the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Pursuant to its authority to develop regulations to implement methods and procedures for protecting those privacy rights (§ 227(c)(2)), the FCC established a National "Do Not Call" Registry and promulgated related regulations at 47 C.F.R. § 64.1200(d). Of particular relevance to this Motion, Section 227(c)(5) provides a private right of

action for "a person who has received more than one telephone call . . . in violation of the regulations prescribed under this subsection."

Section 227(d) sets forth technical and procedural standards, and prohibits, *inter alia*, "initiat[ing] any communication using a telephone facsimile machine, [] mak[ing] any telephone call using any automatic telephone dialing system . . . or transmit[ing] any artificial or prerecorded voice message via telephone" in violation of such standards.

Section 227(e), which was amended in 2010 to prohibit misleading or inaccurate caller ID information, was amended again in 2018 to broaden that provision beyond voice calls to reach both "a call made using a voice service" and "a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A)-(B). That amendment was limited to Section 227(e) and did not similarly expand the scope of communications under any other sections of the statute. *See* Truth in Caller ID Act of 2009, Pub. L. No. 111-331, 124 Stat. 3572, 3572–75 (2010).

Section 227(f) governs the TCPA's effect on state law and 227(g) gives enforcement authority to State Attorneys General. Unlike the private right of action under § 227(c) that applies only to "telephone calls," the enforcement authority of State Attorneys General under § 227(g)(1) includes both "telephone calls" and "other transmissions."

Finally, Sections 227(h)-(j), enacted in 2019, address reporting, information sharing, and robocall blocking service.

B.    **Summary of Complaint**

The Complaint does not allege that Plaintiff received a single voice call. (*See generally* Complaint.) Rather, the Complaint alleges two causes of action arising from Plaintiff's alleged receipt of at least 24 text messages. (*See* Complaint, Dkt. No. 1, [hereinafter "Compl."] ¶ 22; *see also id.* at ¶ 28 (containing images of alleged text messages).) Plaintiff seeks to represent a putative class of individuals who allegedly received similar text messages. (*Id.* ¶¶ 39, 53.)

**MEMORANDUM IN SUPPORT OF DEFENDANT WHAT IF HOLDINGS LLC'S**    **Page 3**
**MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

Based on those allegations, Plaintiff asserts two causes of action First, Plaintiff alleges violations of 47 C.F.R. § 64.1200(c) because Plaintiff and the putative class members allegedly received the text messages "despite their numbers being on the National Do Not Call Registry." (*Id.* ¶ 70.) This First Cause of Action is pled pursuant to the private right of action set forth in 47 U.S.C. § 227(c)(5). (*Id.* ¶ 72.) Second, Plaintiff alleges violations of 47 C.F.R. § 64.1601(e)(1) because these text messages were allegedly sent to Plaintiff and the putative class members "without proving [*sic*] a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours." (*Id.* ¶ 77.) The Second Cause of Action also appears to be pled pursuant to Section 227(c)(5). (*See id.* ¶¶ 79-80.)[1]

## III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *In re Katrina Canal Breaches Litig.*,

---

[1] The Complaint improperly pleads violations of § 64.1601(e)(1) pursuant to the private right of action in Section 227(c)(5). As explained below in Section B, § 64.1601(e)(1) was promulgated pursuant to Section 227(d), which, unlike Section 227(c), does not include any private right of action.

**MEMORANDUM IN SUPPORT OF DEFENDANT WHAT IF HOLDINGS LLC'S**                    **Page 4**
**MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## IV.   <u>ARGUMENT</u>

The First Cause of Action should be dismissed because Plaintiff fails to allege receiving a telephone call as required to invoke the private right of action under Section 227(c). The Second Cause of Action should be dismissed because Section 227(d), under which the Caller ID regulations were promulgated, does not provide a private right of action at all. Dismissal of both should be with prejudice because no amendment can solve these legal deficiencies.

### A.   **The First Cause of Action Must be Dismissed Because The Private Right of Action Under § 227(c)(5) Applies only to Telephone Calls.**

Adhering to the Supreme Court's mandate in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) that courts must independently determine the single, best meaning of a statute under their review, multiple courts have held that the phrase "telephone call" in the private right of action under Section 227(c)(5) does not include text messages. Because Plaintiff only alleges receiving text messages, and not telephone calls, dismissal of the First Cause of Action is warranted here.

1.   <u>The ordinary public meaning of "telephone call" as used in Section 227(c)(5) did not include written messages at the time it was enacted</u>

A statute must be interpreted "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 654 (2020). "That is the whole point of having written statutes; every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400 (internal quotation marks omitted). Courts use the tools of statutory interpretation to determine the best meaning of a statute, and once they do, it is controlling. *See id*. "In the business of statutory interpretation, if [an interpretation] is not the best"— the single best— "it is not permissible." *Id.*

"'The appropriate starting point when interpreting any statute is its plain meaning.'" *Bradford v. Sovereign Pest Control of TX, Inc.*, 167 F.4th 809, 812 (5th Cir. 2026) (internal citations omitted). The plain meaning of an unambiguous statute is also the ending point when it does not lead to an absurd result. *Tex. Brine Co., L.L.C. v. Am. Arbitration Ass'n*, 955 F.3d 482, 486 (5th Cir. 2020). Here, the starting and ending point of the analysis is Section 227(c)(5) of the TCPA, which, unchanged since its enactment in 1991, provides:

> (5) PRIVATE RIGHT OF ACTION.—A person who has received more than one ***telephone call*** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
>> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>>
>> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
>>
>> (C) both such actions.

§ 227(c)(5) (emphasis added). The phrase "telephone call" is not defined in the TCPA. At the time of the TCPA's enactment in 1991, a "telephone call" was ordinarily understood (as it is today) to refer to communication through reproduction of sound or voice, not by written message.

Multiple contemporaneous sources confirm the distinction between a telephone call and written message. Dictionaries at that relevant time defined the word "telephone" in terms of its ability to reproduce voice or sound. *See* Telephone, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1211 (10th ed. 1993) (an instrument for "reproducing sounds at a distance"); Telephone, OXFORD ENGLISH DICTIONARY 728 (2d ed. 1989) ("An apparatus for reproducing sound, esp. that of the voice, at a great distance."). In 1991, a "call" meant

the act of "calling on the telephone." Call, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1991). A "telephone call" thus, as defined at the time of the TCPA's enactment, involved a communication by voice or sound. Because a text message is a written message, and not a communication by voice or sound, it cannot meet the definition of "telephone call."

That a "telephone call" involves a communication by voice or sound is also evident through ordinary English usage. People did not ordinarily understand in 1991—as they do not today—a statement such as "I received a telephone call from my bank" to mean "I received a written message from my bank." And a person would not, in 1991 or today, ordinarily understand an instruction requiring that an emergency motion "[b]e preceded by telephone call to the clerk's office and to the offices of opposing counsel advising of the intent to file" to allow for that notice be delivered to the clerk's office and opposing counsel by text message. 5TH R. 27.3. That is because the phrase "telephone call" in ordinary conversation simply has never been understood to include a written message.

As courts have noted in their own analyses, text messaging was not an available mode of communication when the TCPA was enacted in 1991. "The first text message was sent on December 3, 1992." *Blow v. Bijora*, Inc., 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016), *aff'd on other grounds*, 855 F.3d 793 (7th Cir. 2017). The distinction between calls and text messaging was self-evident as the new form of written communication became publicly available. By 1996, companies like Omnipoint offered "new technology, called personal communications services, [which advocates] said [] delivered crystal-clear sound and allowed people to use their hand-held phones for everything from sending electronic mail to reading the latest news headlines." Mark Landler, *New Weapons, New Rivals in*

*Wireless Phone Competition*, N.Y. TIMES, Nov. 14, 1996. For example, a 1996 user manual for an Omnipoint handset reflects that a written message was understood as something distinct from a telephone call, stating: "If you want to contact someone without having a phone conversation, you can create and send text messages from your handset." Omnipoint User Guide, Ericsson CF337/CH337 (1996), at 34, available at https://dn790000.ca.archive.org/0/items/manualsonline-id-0e328daa-4808-4fcb-8777-ef01e90eb66b/0e328daa-4808-4fcb-8777-ef01e90eb66b.pdf (last visited July 15, 2026).[2] The 1996 manual confirmed the treatment of telephone calls, text messages, and short e-mail messages as distinct forms of communication—not as different forms of a single "telephone call."

Even today, notwithstanding evolutions in technology, "telephone call" and "text message" continue to have distinct meanings. Consistent with that ordinary understanding, one district court quoted the common-sense observation that:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.

*Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025). The court then concluded:

> Certainly, no ordinary person would think of a text message as a "*telephone* call." This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.

---

[2] *See also id.* at ii ("But talking is just the beginning. Your Omnipoint handset is more than a phone . . . [] Your handset lets you make and receive calls. It also lets you receive messages, in both text and numeric form. And it lets you send and receive short e-mail messages.")

*Id.* (emphasis in original). In short, a telephone call did not mean a written message in 1991, just as it does not today.

Other courts have reached the same conclusion. Most recent to this Motion, the Seventh Circuit Court of Appeals, after conducting a detailed analysis, held that the phrase "telephone call" in 227(c)(5) does not include text messages. *Steidinger v. Blackstone Med. Servs.,* No. 25-2398, 2026 WL 2028517, at *3–6 (7th Cir. July 14, 2026) (affirming district court's dismissal of case on those grounds).

A non-exhaustive list of other courts that have held that the ordinary public meaning of "telephone call" under Section 227(c) does not extend to text messages includes *Stockdale v. Skymount Prop. Grp.*, LLC, 825 F. Supp. 3d 622 (N.D. Ohio Mar. 3, 2026); *James v. Smarter Contact, Inc.*, No. 8:25-cv-1657-KKM-SPF, 828 F. Supp. 3d 1367  (M.D. Fla. Mar. 31, 2026); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811-TWT, 2026 WL 456919(N.D. Ga. Feb. 17, 2026); *Irvin v. Sonic Indus. Servs.*, LLC, No. 3:25-cv-00242-LMM, 2026 WL 1098403 (N.D. Ga. Apr. 20, 2026); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00846-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025); and *Lopresti v. Nouveau Essentials Marketing, LLC*, No. 5:25-cv-00282-CEM-PRL, 2026 WL 964758 (M.D. Fla. Feb. 26, 2026). The Court here should reach the same conclusion, as further confirmed by the statutory structure of the TCPA.

> 2.    The structure of Section 227(c) and its surrounding provisions confirms that its private right of action does not extend to text messages

"[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 492 (2015) (quotation omitted); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). "In a given statute, the same term usually has the same meaning and different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) (citing Antonin Scalia & Brian A. Garner, *Reading Law: The*

*Interpretation of Legal Texts*, 170-71 (2012)). For example, the Supreme Court confirmed that the words of a statute "must be read in their context and with a view to their place in the overall statutory scheme" before holding that the phrase "money remuneration" must mean something different from the phrase "all remuneration" when used in "companion statute[s]." *King*, 576 U.S. at 492; *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018). And "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Gozlon-Peretz v. United States,* 498 U.S. 395, 404 (1991) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

The TCPA uses the phrase "telephone call" in one section and the phrase "telephone call or messages" in another; thus, requiring the Court to interpret "messages" as separate and apart from a "telephone call." Sections 227(c)(1) and (c)(2), under which the DNC regulations were promulgated, grant the FCC authority to engage in rulemaking "to protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). "Telephone solicitation" is defined to mean "initiation of a *telephone call or message*." *Id.* § 227(a)(4) (emphasis added). But the private right of action under section 227(c)(5) does not use the broader phrase "telephone solicitation," which includes either telephone call or message; instead, it uses only the phrase "telephone call."  Reading "telephone call" to include "message" would erase the distinction Congress itself drew in defining "telephone solicitation" as the initiation of a "telephone call or message," and enlarge the scope of the private right of action beyond that in the statute. *Id.* § 227(a)(4) (emphasis added).

It would also erase the distinction Congress drew in granting broad enforcement authority to State Attorneys General over "telephone calls or *other transmissions*." § 227(g)(1) (emphasis

added). Unlike the broad authority granted to the FCC and State Attorneys General to, respectively, address "messages" and "other transmissions," the private right of action in section 227(c)(5) is granted only to a person who receives "telephone call[s]." *Id.* § 227(c)(5). Conflating "telephone call" with "message" or "other transmission" would erase the lines Congress drew between private and public enforcement of Section 227(c).

Further support can be found in Congress's later amendments to the TCPA where it expressly introduced the phrase to a "text message" rather than using the pre-existing phrase "telephone call." For example, in 2018, Congress amended Section 227(e) to broaden its application of certain caller id requirements to incorporate both "a call made using a voice service" and "a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A)-(B); *see id.* § 227(e)(1) (covering "any voice service or text messaging service"). There, Congress defined "[t]he term 'text message'" as a "message consisting of text, images, sounds or other information that is transmitted to or from" a device with a "10-digit telephone number or N11 service code," including "a short message service (commonly referred to as 'SMS') message and a multimedia message service (commonly referred to as 'MMS') message." *Id.* § 227(e)(8)(C); *see also id.* § 227(i)(2) (cross-referencing the definition of "text message" in a subsequent amendment). No such language is present in nor added to Section 227(c). The Complaint's proposal that the Court should interpret the definition of a "telephone call" to already encompass a "text message" would deprive those amendments of independent effect. That is improper. Courts should avoid interpreting one statutory term so broadly that it "assumes the same meaning as another statutory term." *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698 (2022) (internal quotation omitted); *see also Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 35 (2003) ("A statutory interpretation that renders another statute superfluous is of course to be avoided."). Congress's decision to amend §

227(e) to include "text message" in a provision that already addressed "telephone calls" confirms that Congress understood those terms to be distinct. There would have been no need to introduce the new term "text message" if it were already encompassed within the pre-existing phrase "telephone call." This Court should honor that distinction and reject the invitation to include "text message" within Section 227(c)'s use of the phrase "telephone call."

### 3. Cases to the contrary are not persuasive

Neither the Supreme Court[3] nor the Fifth Circuit Court of Appeals has held whether a "telephone call" under Section 227(c) includes a text message. The only Circuit Court to address this issue under § 227(c)(5) is *Steindinger*, which held that the private right of action created by § 227(c)(5) does not extend to text messages. 2026 WL 2028517, at *6. District courts that have reached a contrary conclusion are not persuasive.[4]

In opining that the phrase "telephone call" in Section 227(c)(5) includes text messages, courts have misapplied the ordinary-meaning analysis in various ways. Some decisions have turned to dictionary definitions published years after the TCPA's enactment or given the word "call" an atypical or modern definition without regard to the contemporaneous ordinary meaning of the modifying word "telephone." *See Stockdale v. Skymount Prop. Grp.*, LLC, 825 F. Supp. 3d

---

[3] The Complaint cites *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) as "confirm[ation] by the Supreme Court[] [that] text messages are 'calls' for the purposes of the TCPA." (Compl. ¶ 27.) But *Campbell-Edwald*—which addressed the phrase "any call" in § 227(b)(1)(A)(iii), not the phrase "telephone call" in § 227(c)(5)—expressly stated that the issue of whether a text message can qualify as a call was "undisputed*." Campbell-Ewald Co.* at 156. The Supreme Court later cited *Campbell-Ewald Co.* in the *Facebook* case where it noted that the question of whether a text message can qualify as calls was not in dispute and thus the Court would "assume that it does without considering or resolving that issue." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 & n.2 (2021). *Campbell-Ewald* thus "doesn't bear on the present issue." *Steidinger*, 2026 WL 2028517, at *8.

[4] Cases decided prior to *Loper Bright* (2024) and *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146 (2025) are easily distinguishable because most, if not all, of those cases relied upon FCC interpretation, which is no longer binding. *See Steidinger*, 2026 WL 2028517, at *4 ("Rather, we interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.").

**MEMORANDUM IN SUPPORT OF DEFENDANT WHAT IF HOLDINGS LLC'S**　　　　　**Page 12**
**MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

622, 625, n.5 (N.D. Ohio 2026) (noting decisions and stating that "[t]his Court respectfully disagrees with the textual analyses undertaken by these courts.").

For example, in *Alvarez v. Fiesta Nissan, Inc.,* the dispositive question was framed as "whether the concept of a 'text message' is *fairly embraced* by the meaning of 'telephone call' in 1991," and then answered by drawing on a "capacious" definition of the word "call," and the functionality of a modern smartphone,[5] to conclude that "a text message [] *falls reasonably* within the literal language of the statute." No. 7:25-CV-00343, 2026 WL 202930, at *4–5 (S.D. Tex. Jan. 26, 2026), (emphasis added). But whether the phrase "telephone call" in 1991 "fairly embraced" text messages, or whether a text messages "falls reasonably" within the literal language of that phrase, is not enough. The ordinary-meaning inquiry is not satisfied by locating the broadest literal interpretation that could reasonably support a desired result. Instead, the ordinary-meaning analysis demands the *best* ordinary meaning of the statutory phrase Congress enacted. *See Loper Bright*, 603 U.S. at 400. "It therefore makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best." *Id.* And the *best* interpretation, for the reasons explained above in Sections A(1) and A(2) of this Motion, is that the ordinary public meaning of "telephone call" in 1991 did not include a text message.

B.     **The Second Cause of Action Must be Dismissed Because the Alleged Violations Arise Under Regulations for Which there is no Private Right of Action**

Plaintiff's Second Cause of Action asserts that the text messages received by Plaintiff failed to display the requisite caller identification information pursuant to 47 C.F.R. § 64.1601(e)

---

[5] Looking to the *modern* functionality of a smartphone was improper. *See Steidinger*, 2026 WL 2028517, at *4-5 ("Text messages do not reproduce sounds, suggesting that they do not qualify as a new application of telephone call within the meaning of that term " and "reject[ing] the 'march of technology' standing alone as sufficient to identify the meaning of statutory language); *see also Facebook,* 592 U.S. at 407 (reversing a Ninth Circuit interpretation of the TCPA that "by classifying almost all modern cell phones as autodialers, would produce an outcome that makes even less sense").

(Compl. ¶¶ 75, 76); however, that regulation was promulgated by the FCC pursuant to § 227(d), which does not provide a private right of action. Thus, the Second Cause of Action does not state a valid claim for relief and should be dismissed with prejudice.

"Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-cv-396-SI, 2026 WL 496609, at *4 (D. Or. Feb. 23, 2026). Thus, the relevant question here is not whether § 64.1601(e)(1) creates a private right of action—"that answer will always be 'no'"—but rather whether the underlying relevant statute (here, the TCPA) "creates, or authorizes, a private right of action under which a plaintiff can sue for violations of the statute's enabling and implementing regulations." *Id.* As the court explained in *Worsham v. Travel Options, Inc.*:

> An asserted violation of 47 C.F.R. § 64.1601(e)(1) is not properly brought under either the TCPA's subsection *b* or *c*. Any violation of § 64.1601(e)(1) is a violation of technical and procedural standards under subsection *d*, and . . . no private right of action exists under the latter subsection of the TCPA.

No. 1:14-cv-02749-JKB, 2016 WL 4592373, at *4, 7 (D. Md. Sept. 2, 2016). The *Worsham* Court concluded that "caller ID technology does not fit neatly into the focus of §§ 227(b) or (c)" because neither of those subsections require the use of technology to accomplish their respective purposes. *Id.* at *4. Thus, "it is clear that Congress did not create a private right of action to enforce the [Truth in Caller ID Act]." *McDermet v. John C. Heath, Attorney at Law, PLLC*, No. 1:17-12327-FDS, 2018 WL 627371, at *3 (D. Mass. Jan. 30, 2018).

Courts routinely decline to infer a private right of action where the statutory provision "does not expressly convey a private right of action." *Meyer v. Cap. Alliance Grp.*, No. 3:15-cv-02405-WVG, 2017 WL 5138316, at *16–17 (S.D. Cal. Nov. 6, 2017); s*ee also Worsham*, 2016 WL 4592373, at *7 (D. Md. Sept. 2, 2016); *Braver v. Clear Sky Fin., LLC*, No. 5:22-cv-00710,

**MEMORANDUM IN SUPPORT OF DEFENDANT WHAT IF HOLDINGS LLC'S**      **Page 14**
**MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

2023 WL 12250902, at *4 (W.D. Okla. Jan. 3, 2023); *Dobronski v. SunPath Ltd.,* No. 2:19-cv-13094, 2020 WL 8840311, at *6–7 (E.D. Mich. July 27, 2020); *Griffin v. American-Amicable Life Ins. Co. of Tex.*, No. 6:24-cv-00243-MC, 2024 WL 4333373, at *4 (D. Or. Sept. 27, 2024). In *Meyer*, the court concluded that there was no private right of action because it was persuaded that had the FCC intended one to be included, it would have done so. 2017 WL 5138316, at *16. "Where a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, it is 'highly improbable' that Congress—or here, the FCC—'absent mindedly forgot to mention an intended private action.'" *Id.* Similarly, the court in *Dobronski v. Selectquote Ins. Servs.* grappled with the various subsections of the TCPA and confirmed that § 64.1601(e) does not "create a separate mechanism upon which a consumer can make an actionable claim" because it is promulgated under the technical and procedural safeguards of § 227(d). 462 F. Supp. 3d 784, 789–90 (E.D. Mich. 2020). On that basis, both the *Meyer* and *Dobronski* courts dismissed caller identification claims identical to those alleged in the Second Cause of Action.

The same disposition is warranted here. Because there is no private right of action to enforce a violation of § 64.1601(e)(1), Plaintiff's Second Cause of Action does not and cannot state a valid claim for relief and must be dismissed.

## V.   **CONCLUSION**

Based on the foregoing, What If Holdings, LLC respectfully requests that this Court grant its motion and dismiss Plaintiff's Complaint with prejudice.

Dated: July 16, 2026

Respectfully Submitted,

/s/ Paul A. Rosenthal
PAUL A. ROSENTHAL (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey
(973)549-7000 (Telephone)
paul.rosenthal@faegredrinker.com

SARA E. INMAN (24073098)
FAEGRE DRINKER BIDDLE & REATH LLP
2323 Ross Ave., Suite 1700
Dallas, Texas 75201
(469) 357-2500 (Telephone)
sara.inman@faegredrinker.com

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served to all counsel of record in accordance with the Federal Rules of Civil Procedure on July 16, 2026.

/s/ Paul A. Rosenthal
Paul A. Rosenthal