**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **RYLEIGH STARLING,** individually and on behalf of a class of all persons and entities similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**WHAT IF HOLDINGS LLC D/B/A C4R MEDIA CORP.**<br><br>*Defendant.* | Civil Action No. 3:26-cv-01039-B<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**<u>PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Introduction**................................................................................................................ **1**

**Background** ................................................................................................................... **4**

**Argument**...................................................................................................................... **5**

    **I.  The Do Not Call List provisions in TCPA section 227(c) encompass text messages and authorize the FCC to prohibit them.**. ........................................................................ **5**

        A. The plain meaning of the word "call" includes text messages ............................................ 8

        B. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions. ...................................................................... 13

        C. The other Federal Courts in Texas and elsewhere in the Fifth Circuit that have considered this question got it right. ....................................................................... 14

        D. What If's arguments for a narrower interpretation, including its reliance on Steidinger, are unpersuasive. ........................................................................... 17

    **II. There is a private right of action for Plaintiff's caller ID claim.** .................................. **22**

**Conclusion** ................................................................................................................... **24**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbas v. Selling Source, LLC*,
2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ................................................................ 10

*Alvarez v. Fiesta Nissan, Inc.*,
2026 WL 202930 (S.D. Tex. Jan. 26, 2026) ..................................................... 3, 16, 18

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*,
708 F.3d 737 (6th Cir. 2013) ............................................................................................ 9

*Barton v. Am. Fam. Life Assurance Co. of Columbus*,
2026 WL 25742 (W.D. Wash. Jan. 5, 2026) ................................................................. 23

*Barton v. Bright Solar Marketing LLC*,
2025 WL 2880136 (W.D. Wash. Oct. 9, 2025) ............................................................. 23

*Bosley v. A Bradley Hosp.*,
2025 U.S. Dist. LEXIS 183986 (S.D. Fla. Sept. 18, 2025) ........................................... 7

*Braver v. Clear Sky Fin., LLC*,
2023 WL 12250902 (W.D. Okla. Jan. 3, 2023) ............................................................ 22

*Cacho v. McCarthy & Kelly LLP*,
739 F. Supp. 3d 195 (S.D.N.Y. 2024) ........................................................................... 13

*Callier v. Am. Auto Grp. LLC*,
2026 WL 1741206 (W.D. Tex. May 29, 2026) ......................................................... 3, 17

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ................................................................................................... 8, 11

*Cole v. C/T Install Am., LLC*,
2026 WL 916582 (E.D. Pa. Mar. 23, 2026) ................................................................... 6

*Cranor v. 5 Star Nutrition, L.L.C.*,
998 F.3d 686 (5th Cir. 2021) ..................................................................................... 2, 17

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) ........................................................................ 18

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980) ....................................................................................................... 20

*Dilanyan v. Hugo Boss Fashions*,
2025 U.S. Dist. LEXIS 254358 (C.D. Cal. Dec. 3, 2025) .............................................. 7

*Dobronski v. CHW Grp., Inc.*,
2025 WL 2426370 (E.D. Mich. Aug. 21, 2025) ........................................................... 23

*Dobronski v. Daraujo*,
2025 WL 3908484 (E.D. Mich. Dec. 1, 2025) .............................................................. 23

*Dobronski v. Selectquote Ins. Servs.*,
773 F. Supp. 3d 373 (E.D. Mich. 2025) ........................................................................ 23

*Dobronski v. SunPath Ltd.*,
  2020 WL 8840311 (E.D. Mich. July 27, 2020) ................................................................. 22
*Duron v. Kings Capital Holding LLC*,
  2026 WL 319779 (W.D. Tex. Jan. 13, 2026) ........................................................ 3, 6, 15, 17
*Esquivel v. Mona Lee, Inc.*,
  2025 WL 3275607 (S.D. Cal. Nov. 24, 2025) ....................................................................... 7
*Evers v. CampaignSidekick, LLC*,
  2025 WL 2896818 (N.D. Ill. Oct. 10, 2025)......................................................................... 7
*Garcia Pinach v. Bondi*,
  147 F.4th 117 (2d Cir. 2025) ............................................................................................. 22
*Griffin v. American-Amicable Life Ins. Co. of Tex.*,
  2024 WL 4333373 (D. Or. Sept. 27, 2024) ........................................................................ 22
*Harriel v. Bealls, Inc.*,
  2025 WL 2379617 (M.D. Fla. Aug. 15, 2025) ................................................................... 13
*Henson v. Santander Consumer USA Inc.*,
  582 U.S. 79 (2017).......................................................................................................... 9, 19
*Hernandez v. Bedford Dental*,
  2026 U.S. Dist. LEXIS 23208 (N.D. Ill. Feb. 4, 2026) ...................................................... 6
*Howard v. Republican National Committee*,
  164 F.4th 1119 (9th Cir. 2026) .......................................................... 1, 2, 3, 7, 8, 9, 11, 14
*Hudson v. Palm Beach Tan, Inc.*,
  2024 WL 4190513 (M.D.N.C. Aug. 12, 2024)..................................................................... 7
*Hulce v. Zipongo Inc.*,
  132 F.4th 493 (7th Cir. 2025) ....................................................................................... 4, 11
*Jones v. Blackstone Medical Services, LLC*,
  792 F. Supp. 3d 894 (C.D. Ill. 2025) ............................................................................ 18, 20
*Keating v. Peterson's Nelnet, LLC*,
  615 F. App'x 365 (6th Cir. 2015) ...................................................................................... 10
*King v. Burwell*,
  576 U.S. 473 (2015)........................................................................................................... 16
*Krakauer v. Dish Network, L.L.C.*,
  925 F.3d 643 (4th Cir. 2019) .............................................................................................. 4
*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024).................................................................... 1, 3, 6, 11, 13, 16, 22
*Lozano v. Twentieth Century Fox Film Corp.*,
  702 F. Supp. 2d 999 (N.D. Ill. 2010) ........................................................... 1, 9, 10, 20, 21
*Matter of Erickson*,
  815 F.2d 1090 (7th Cir. 1987) ...................................................................................... 15, 16
*McDermet v. John C. Heath, Attorney at Law, PLLC*,
  2018 WL 627371 (D. Mass. Jan. 30, 2018)....................................................................... 22

iv

*McGonigle v. Office Depot*,
   2025 U.S. Dist. LEXIS 231061 (S.D. Fla. Nov. 25, 2025)..................................................... 7

*McGonigle v. Shopperschoice.com, L.L.C.*,
   2026 WL 413198 (M.D. La. Feb. 13, 2026) ................................................................. 3, 6, 16

*McGonigle v. Teleflora LLC*,
   No. 1:25-cv-807 (E.D. Va. Mar. 13, 2026) ......................................................................... 6

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*,
   606 U.S. 146 (2025)................................................................................. 3, 6, 11, 15, 22

*Meyer v. Cap. Alliance Grp.*,
   2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ...................................................................... 22

*Mujahid v. Newity, LLC*,
   2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) ................................................................. 7, 9, 14

*New Prime Inc. v. Oliveira*,
   586 U.S. 105 (2019)................................................................................................ 2

*Newell v. JR Capital, LLC*,
   791 F. Supp. 3d 571 (E.D. Pa. 2025) ........................................................................ 3, 22

*Novia v. Mobiz, Inc.*,
   2026 WL 770036 (D. Mass. Mar. 18, 2026)........................................................................ 3

*Perrin v. U.S.*,
   444 U.S. 37 (1979)................................................................................................ 8

*Rabbitt v. Rohrman Midwest Motors, Inc.*,
   2026 WL 851279 (N.D. Ill. Mar. 27, 2026)................................................................ 6, 22

*Rubin v. Staples, Inc.*,
   2026 WL 881651 (D.N.J. Mar. 31, 2026)......................................................................... 6

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) .............................................................. 8, 9, 11, 13, 14

*Squillacote v. U.S.*,
   739 F.2d 1208 (7th Cir. 1984) ................................................................................. 20

*Starling v. Homeover General Contractors*,
   2026 WL 1649101 (E.D. Tex. June 8, 2026)..................................................................... 22

*Steidinger v. Blackstone Medical Services*,
   2026 WL 2028517 (7th Cir. July 14, 2026)............................................. 2, 8, 16, 17, 18, 19, 20

*United States v. Graves*,
   908 F.3d 137 (5th Cir. 2018) .................................................................................. 16

*Warciak v. Subway Restaurants, Incorporated*,
   949 F.3d 354 (7th Cir. 2020) ................................................................................. 9, 11

*Watkins v. EyeBuyDirect, Inc.*,
   2025 U.S. Dist. LEXIS 167479 (W.D. Tex. Aug. 28, 2025)............................................. 7, 15

*Weingrad v. DaBella Exteriors, LLC*,
   2026 WL 496609 (D. Or. Feb. 23, 2026).................................................................. 23, 24

*Wilson v. Better Mortgage Corp.*,
 811 F. Supp. 3d 631 (S.D.N.Y. 2025)...................................................................... 6, 9
*Wilson v. Easy Spirit, LLC*,
 2026 WL 884170 (D. Conn. Mar. 31, 2026) ................................................................ 6
*Wilson v. Hard Eight Nutrition LLC*,
 804 F. Supp. 3d 1141 (D. Or. 2025) ......................................................................... 7
*Wilson v. MEDVIDI Inc.*,
 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025)................................... 4, 7, 10, 13, 14, 20
*Wilson v. Skopos Financial, LLC*,
 2025 WL 2029274 (D. Or. July 21, 2025)............................................................ 7, 14
*Wisconsin Central Ltd v. United States*,
 585 U.S. 274 (2018)................................................................................................ 20
*Worsham v. Travel Options, Inc.*,
 2016 WL 4592373 (D. Md. Sept. 2, 2016) .............................................................. 22


**Statutes**
47 U.S.C. § 227........................................................... 1, 2, 4, 5, 10, 13, 14, 18, 19, 21


**Regulations**
47 C.F.R. § 64.1200 ...................................................................................... 5, 15, 19
47 C.F.R. § 64.1601 .................................................................................. 3, 5, 22, 23


**Administrative Decisions & Guidance**
*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
 18 FCC Rcd. 14014 (2003)............................................................................ 1, 10, 13
*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
 30 FCC Rcd. 7961 (2015)................................................................................ 10, 13
*In re Emanuel "Manny" Hernandez*,
 2018 WL 6830220 (F.C.C. Dec. 21, 2018)................................................................. 10
*In re Targeting and Eliminating Unlawful Text Messages*,
 38 FCC Rcd. 12247 (2023).................................................................................... 10

**Introduction**

A 1991 law that bars vehicles from a park applies equally to Cybertrucks and to sedans, even though the former didn't exist at the time. So, too, here: the Telephone Consumer Protection Act's Do Not Call Registry provisions prohibit sending unwanted telemarketing text messages to subscribers on the National Do Not Call Registry, just as they prohibit unwanted voice calls. Of course, text messaging didn't exist when the TCPA was passed in 1991, so Congress didn't have texts specifically in mind. But no matter: As courts and the FCC have recognized, the plain meaning of the word "call" in the TCPA encompasses any "communication used primarily between telephones," regardless of whether that "call" is communicated by "voice" or "text message." *Howard v. Repub. Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). Section 227(c)(5)'s private right of action therefore reaches the text messages Plaintiff Ryleigh Starling received, and the TCPA's Do Not Call Registry rules apply to those messages, no differently than they would to voice calls.

The structure and purpose of the TCPA's Do Not Call List provisions confirm that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person" with a commercial purpose—broadly inclusive language that encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4). And, anyway, the statute's Do Not Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A),

(E). So, any doubt on this question should be resolved in favor of deference to the agency's longstanding reasonable judgment.

Defendant What If Holdings, LLC d/b/a C4R Media Corp.'s motion leans almost entirely on a single, out-of-circuit decision—*Steidinger v. Blackstone Med. Servs.*, No. 25-2398, 2026 WL 2028517 (7th Cir. July 14, 2026)—which held that "telephone call" in section 227(c)(5) excludes text messages. But *Steidinger* is not binding on this Court, stands alone among the courts of appeals, and conflicts directly with the Ninth Circuit's reasoning in *Howard*, 164 F.4th at 1123–24, as well as with the near-uniform consensus of the district courts—including courts within this Circuit—that have considered the question. What If's incorrect intuition, like the panel's in *Steidinger*, treats the absence of an audible component as dispositive. That's not, however, how statutory interpretation works. Courts look to a statute's ordinary "meaning at the time of … adoption" to interpret the law, not "modern intuition." *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). And although "every statute's *meaning* is fixed at the time of enactment," there is nothing odd about old text finding "new *applications*" as times change. *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). Nor does it matter that no one would describe a text message as a "telephone call" in "today's American parlance." Modern parlance can be misleading as times change.

The Fifth Circuit's treatment of the TCPA further supports denial of the Motion. Although the Fifth Circuit has not yet squarely addressed whether telemarketing text messages constitute "telephone calls" under 47 U.S.C. § 227(c)(5), it has repeatedly recognized that the TCPA applies to text messages and has described robocalls and robotexts as parallel harms regulated by the statute. *See Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress in the… TCPA."). More importantly, district courts within this

Circuit that have considered the issue following *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), have overwhelmingly concluded that text messages are actionable under § 227(c). *See, e.g., Duron v. Kings Capital Holding LLC*, No. 3:25-cv-149, 2026 U.S. Dist. LEXIS 6340, at *12 (W.D. Tex. Jan. 13, 2026); *Alvarez v. Fiesta Nissan, Inc.*, 2026 WL 202930 *3-7 (S.D. Tex. Jan. 26, 2026); *McGonigle v. ShoppersChoice.com*, 2026 U.S. Dist. LEXIS 30157, at *13–14 (M.D. La. Feb. 13, 2026); *Callier v. Am. Auto Grp. LLC*, 2026 U.S. Dist. LEXIS 120642, at *18 (W.D. Tex. May 29, 2026). What If's motion (at 12-13) singles out *Alvarez* for criticism, but as explained below, that criticism misreads Judge Crane's analysis. Granting Defendant's Motion would require this Court not only to depart from that growing consensus among courts within the Fifth Circuit, but also to adopt the reasoning of a single out-of-circuit panel that conflicts with the Ninth Circuit's analysis in *Howard*.

Defendant's separate attack on Plaintiff's Caller ID claim fares no better. The Complaint alleges that Defendant transmitted telemarketing text message calls without the CPN or ANI information required by federal law to allow recipients to submit a do-not-call request during regular business hours. Although Defendant argues that 47 C.F.R. § 64.1601(e) lacks a private right of action, the growing body of authority addressing that issue has reached the opposite conclusion, recognizing that violations of the caller-identification regulations are enforceable through the TCPA's private enforcement mechanism. *See, e.g., Dobronski v. SelectQuote Ins. Servs.*, 773 F. Supp. 3d 373 (E.D. Mich. 2025); *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025); *Novia v. Mobiz, Inc.*, 2026 U.S. Dist. LEXIS 56563 (D. Mass. Mar. 18, 2026). Thus, even apart from Defendant's flawed interpretation of § 227(c), the Motion fails because Plaintiff has plausibly alleged a violation of the TCPA's caller identification requirements.

3

The Defendant's motion to dismiss should be denied.

## Background

Section 227(c) of the Telephone Consumer Protection Act empowers the FCC to decide whether to create a national Do Not Call List and to determine the rules that will govern it. *See* 47 U.S.C. § 227(c)(1)–(4). The guiding purpose of a Do Not Call List is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1). The key operative term there is "telephone solicitations," which are defined in the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." *Id.* § 227(a)(4). That definition is "more concerned with the purpose of the telephone communications [that are prohibited] than the form in which those communications are transmitted." *Wilson v. Medvidi,* No. 25 Civ. 03996, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025)*; see also Hulce v. Zipongo Inc.*, 132 F.4th 493, 497–500 (7th Cir. 2025) (DNC liability turned on whether a text message had the requisite commercial purpose).[1]

Finally, section 227(c)(5) provides for private enforcement of the FCC's Do Not Call List rules. That provision grants an express private right of action to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under the Do Not Call List rules. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 650 (4th Cir. 2019).

Plaintiff Ryleigh Starling brings this action under the Telephone Consumer Protection Act arising from Defendant What If Holdings, LLC d/b/a C4R Media Corp.'s transmission of

---

[1] Citations may be cleaned up throughout unless explicitly otherwise specified.

unsolicited telemarketing text messages. According to the Complaint, Defendant transmitted at least two dozen text messages to Plaintiff. Compl. ¶ 22; *id.* ¶ 28 (containing images of the alleged text messages). Plaintiff seeks to represent a putative class of individuals who allegedly received similar text messages. *Id.* ¶¶ 39, 53. Plaintiff alleges that Plaintiff and the putative class members received these text messages despite their numbers being registered on the National Do Not Call Registry, in violation of 47 C.F.R. § 64.1200(c). *Id.* ¶ 70. This claim is brought pursuant to the private right of action set forth in 47 U.S.C. § 227(c)(5). *Id.* ¶ 72.

The Complaint also alleges that Defendant violated the TCPA's caller identification regulations. Specifically, Plaintiff alleges that the text messages were sent without providing a CPN or ANI that would have allowed Plaintiff or class members to submit a do-not-call request during regular business hours, as required by 47 C.F.R. § 64.1601(e)(1). *Id.* ¶¶ 77, 79-80. Based on these allegations, Plaintiff asserts two causes of action: a violation of the National Do Not Call Registry provisions, enforceable through the private right of action in 47 U.S.C. § 227(c)(5), *id.* ¶¶ 70, 72, and a violation of the TCPA's caller identification requirements codified at 47 C.F.R. § 64.1601(e)(1), *id.* ¶¶ 77, 79-80.

Argument

I.  **The Do Not Call List provisions in TCPA section 227(c) encompass text messages and authorize the FCC to prohibit them.**

What If contends that a single use of the word "call" in section 227(c)(5)'s private right of action means that the DNC rules cannot apply to text messages. That's incorrect.

As courts and the FCC have long and recently recognized, the statute's ordinary meaning, structure, and purpose refute that argument: The word "call" as used in the TCPA refers to *any* attempt to communicate *by telephone*, so the FCC may prohibit telemarketing texts to numbers on the Do Not Call List. And What If's arguments for its restrictive interpretation all fail. The

5

company goes about interpreting the word "call" in section 227(c)(5) all wrong, appearing to twist statutory terms to support its arguments, and assigning "call" a meaning that is at odds with the rest of the statute in multiple ways. Moreover, because section 227(c) is structured as an express delegation of discretionary authority to the FCC, any doubt about the answer here simply means that Congress intended the agency's reasonable judgment to control.

It should come as no surprise, then, that post-*McLaughlin* and *Loper Bright*, the majority of courts have concluded that under the TCPA text messages are calls. *See Duron v. Kings Capital Holding*, 2026 U.S. Dist. LEXIS 6340, at *12 (W.D. Tex. Jan. 13, 2026) ("[I]nterpreting § 227(c) to include text messages is consistent."); *Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 U.S. Dist. LEXIS 69059, at *13 (D. Conn. Mar. 31, 2026) (holding the word "call, in th[e § 227(c)] context," encompasses text messages); *Rubin v. Staples, Inc.*, No. 2:2545515 (WJM), 2026 U.S. Dist. LEXIS 70359, at *17 (D.N.J. Mar. 31, 2026) ("[T]he Court concludes that "telephone call" can encompass text messages for purposes of § 227(c)(5)"); *Rabbitt v. Rohrman Midwest Motors*, No. 25 C 11312, 2026 U.S. Dist. LEXIS 66266, at *8 (N.D. Ill. Mar. 27, 2026) ("Based on the court's independent examination . . . it agrees with the FCC that § 227(c)(5) applies to text messages."); *Cole v. C/T Install Am., LLC*, No. 25-3531, 2026 U.S. Dist. LEXIS 63254 (E.D. Pa. Mar. 23, 2026) ("The structure of the entire TCPA leads to the conclusion that §227(c) does include text messages."); *McGonigle v. Teleflora LLC*, No. 1:25-cv-807, ECF 66 (E.D. Va. Mar. 13, 2026) (denying motion to dismiss); *McGonigle v. Shopperschoice.Com*, No. 25-152-SDD-RLB, 2026 U.S. Dist. LEXIS 30157, at *13 (M.D. La. Feb. 13, 2026) ("The Court finds that [] 227(c)(5) applies to cell phone text messages."); *Hernandez v. Bedford Dental*, No. 25 CV 6787, 2026 U.S. Dist. LEXIS 23208, at *3 (N.D. Ill. Feb. 4, 2026) ("[The court] declines to hold that the TCPA does not apply to text messages.");

6

*Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *19 (S.D.N.Y. Dec. 5, 2025);

*Dilanyan v. Hugo Boss Fashions*, No. 2:25-CV-05093-JLS-BFM, 2025 U.S. Dist. LEXIS

254358, at *8 (C.D. Cal. Dec. 3, 2025) (concluding "a text message is a 'call'" under § 227(c));

*McGonigle v. Office Depot*, No. 25-80069, 2025 U.S. Dist. LEXIS 231061, at *6 (S.D. Fla. Nov.

25, 2025) ("[A] text message is a call for the purpose of the TCPA"); *Esquivel v. Mona Lee*, No.

3:25-cv-00607-H-BLM, 2025 U.S. Dist. LEXIS 230841, at *8 (S.D. Cal. Nov. 24, 2025)

(denying motion to dismiss); *Mujahid v. Newity*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D.

Ill. Nov. 10, 2025) (same); *Evers v. CampaignSidekick, LLC*, No. 24 CV 11067, 2025 U.S. Dist.

LEXIS 201112, at *9 (N.D. Ill. Oct. 10, 2025) ("[A] text message is also a 'call' for the purpose

of Evers's claim under § 227(c)(5)"); *Wilson v. MEDVIDI*, 2025 U.S. Dist. LEXIS 198827, at *9

(N.D. Cal. Oct. 7, 2025) (no distinction between oral and written communications); *Bosley v. A*

*Bradley Hosp.*, No. 25-CV-22336, 2025 U.S. Dist. LEXIS 183986, at *12 (S.D. Fla. Sep. 18,

2025) ("[A] text message constitutes a 'call' under the TCPA"); *Watkins v. EyeBuyDirect, Inc.*,

No. 1:25-CV-538-RP, 2025 U.S. Dist. LEXIS 167479, at *6 (W.D. Tex. Aug. 28, 2025) ("A

telephone solicitation can be a call or text message."); *Wilson v. Skopos Fin.*, No. 6:25-CV-

00376-MC, 2025 U.S. Dist. LEXIS 138638, at *12 (D. Or. July 21, 2025); *Wilson v. Hard Eight*

*Nutrition*, 804 F. Supp. 3d 1141, 1151 (D. Or. 2025) (applying DNCR provision to text

messages); *Hudson v. Palm Beach Tan*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS

165676, at *16-17 (M.D.N.C. Aug. 12, 2024) ("[T]he statutory text … support[s] the conclusion

that text messages can establish the basis for a claim under § 227(c)(5).").

Courts in more than thirteen districts, and until last week, the only circuit court to have

squarely addressed the issue—the Ninth Circuit—have held that the DNCR provision covers text

messages. *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. Jan. 13, 2026)

7

(reaffirming text messages are "calls"). The Supreme Court has also weighed in on the issue in the context of the TCPA's robocalls provision. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'")—a proposition so uncontroversial that it was not even contested by the parties there. The Seventh Circuit's recent, lone departure in *Steidinger* does not disturb that consensus. As explained below, *Steidinger*'s reasoning does not withstand scrutiny, conflicts directly with *Howard*, and has no application within this Circuit, where the district courts have spoken with one voice in reaching the opposite conclusion.

### A.  The plain meaning of the word "call" includes text messages.

The starting point is the statute's text, which confirms that "call" includes text messages. To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See, e.g.*, *Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term . . . at the time Congress enacted the statute . . . ." (citation omitted)).

Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call'" is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 953–54 & n.3 and *Webster's Third New Int. Dictionary* (1981 ed.)).

This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around

the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone"). "The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, *5 (S.D.N.Y. Dec. 5, 2025).

And courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Better Mortgage Corp.*, 2025 WL 3493815, at *5; *Lozano*, 702 F. Supp. 2d at 1007. Texting is, of course, a means of communicating with someone by telephone. So "text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 954)).

The established definition of "telephone call" in the TCPA therefore readily encompasses texts. Indeed, both the Seventh and Ninth Circuits have said, in cases alleging violations of section 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *see Howard*, 164 F.4th at 1123–24; *Satterfield*, 569 F.3d at 954. And, absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). So, the consensus meaning of the word "call" in section 227(b), as encompassing texts, "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2.

The meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. The word "call" is used extensively in those provisions prohibiting automatic dialing technology and robocalls. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call. So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005; *see also Abbas v. Selling Source, LLC*, No. 09 Civ. 3413, 2009 WL 4884471, at *4 (N.D. Ill. 2009).

The FCC has long endorsed that interpretation of the word "call." The agency determined as early as 2003 that when the TCPA says "call," it must mean not just traditional voice calls but also text messages. 18 FCC Rcd. 14014, 14115 ¶ 165 (Jul. 3, 2003). As the FCC recognized then, the statutory text "encompasses both voice calls and text calls to wireless numbers." *Id.* And the FCC has adhered to that position ever since. *See* 30 FCC Rcd. 7961, 8020 ¶¶ 115–16; *Hernandez*, 2018 WL 6830220, at *1 ¶ 3*; 88 Fed. Reg. 20800, 20802 ¶ 6; 38 FCC Rcd. 12247, 12256–57 ¶ 26.

If anything, even though it is only briefly discussed in the relevant order, the FCC's 2003 interpretation of the word "call" to include texts is especially helpful to understanding the word's original meaning as of 1991. *See* 18 FCC Rcd. at 14115 ¶ 165. When Congress originally drafted the TCPA, text messages were not yet mainstream. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015); *Medvidi*, 2025 WL 2856295, at *2. And texting didn't achieve

widespread popularity until the 2000s.[2] So the FCC's understanding of "call" in 2003 surely approximated its 1991 meaning more closely than our 2025 intuitions, which reflect a world where texting has been ubiquitous for decades. *Cf. Raimondo*, 603 U.S. at 386 ("[T]he contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect.").

Indeed, because it has been broadly understood for decades that the word "call" in the TCPA includes texts, courts have commonly treated that interpretation as obvious and uncontroversial. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"); *Warciak*, 949 F.3d at 356 ("Text messages to a cellular telephone qualify as a 'call' within the meaning of the statute."). That has remained true even after the *McLaughlin* and *Loper Bright* decisions that What If says (at 11-12) should be causing a sea change. For example, the Ninth Circuit recently revisited the "statutory construction" question "under de novo review." *Howard*, 164 F.4th at 1123–24. And the Circuit confirmed its prior holding that a "'text message' constitutes a 'call' within the meaning of the TCPA," without granting any deference to the FCC. *Id.* ("[I]t is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference."). The Seventh Circuit's reading also had not changed prior to the about-face in *Steidinger*. *See Hulce v. Zipongo, Inc.*, 132 F.4th 493, 496–97 (7th Cir. 2025) (taking as a given that texts can be actionable).

The fact that the underlying statute uses the word "telephone call" as opposed to just the word "call" does not make a difference, nor does it transform that term to mean "voice telephone

---

[2] *See, e.g.*, David Crystal, *Toting: The Gr8 Db8* 4 (2008), https://perma.cc/M2Q3-FH44 ("The average number of texts per GSM customer in 1995 was 0.4 per month; by the end of 2000 it was still only 35."); Meghan Keane, *Texting Overtakes Voice in Mobile Phone Usage*, Wired (Sept. 29, 2008), https://perma.cc/CB7E-EZQZ (noting that the number of text messages surpassed the number of voice calls for the first time in 2007).

call." Practically every contemporary dictionary at the time, *including the dictionaries relied on by the Defendant*, make no distinction between the two, nor do they limit the term "telephone call" to mean voice communication. *E.g.*, "Telephone," Webster's Ninth New Collegiate Dictionary ("to communicate by telephone; to send by telephone"); "Call," Webster's Ninth New Collegiate Dictionary ("to get or try to get into communication by telephone"); "Telephone," The Random House Dictionary of the English Language, 2d ed. ("to speak to or summon (a person) by telephone," "to send (a message) by telephone."); "Call," The Random House Dictionary of the English Language, 2d ed. ("to communicate or try to communicate with by telephone"). As the aforementioned dictionaries, some relied on by the Defendant its very self, counsel, the term "telephone" simply modifies the word "call," to distinguish a call sent to a *telephone* as opposed to a "call" made by radio by an animal over the air. A "telephone call" is a communication made by telephone. That definition is not limited to a voice. The phrase's ordinary meaning includes an attempt to communicate *by telephone*. And it goes without saying that text message calls are communications by and to telephones. *Better Mortgage* expressly held that "telephone call" in 1991 meant a communication made by telephone, in line with these definitions.

In fact, other contemporary dictionaries of the era explicitly treat "telephone call" and "call" as synonymous. For instance, the Oxford Encyclopedic English Dictionary defines a "telephone call" as a "call," and defines "call" as "to communicate or converse with by telephone or radio." *See* "call," Oxford Encyclopedic English Dictionary 209 (2d ed. 1991). Under any of these definitions, a "telephone call" is simply a communication made by telephone, which plainly includes text messages (or TTY messages, pager messages, or faxes), sent from one telephone to another. It indicates no preference for voice communication. To "telephone" someone is "to "send (a message) by telephone." *Id.* 1484. These definitions reinforce the understanding that, even in

12

1991, a "telephone call" need only transmit a "message," not include a vocal component. Fax machines, pagers, teletype machines, and TTY devices are all examples of technologies available in 1991 that transmitted text-based "messages" under that definition.

So, even post-*Loper Bright*, "the significant weight of case authority" supports interpreting "call" to include text messages. *Better Mortg. Corp.*, 2025 WL 3493815, at *9.  In sum, the FCC's conclusion that "the term 'call' includes a text message" therefore reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *3.  The statute's structure confirms this reading.

### B.  That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.

Much of What If's argument focuses on the single use of the word "call" in section 227(c)(5). But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id*. § 227(e)(8)(C). And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers: The FCC determined that cell phone subscribers are covered when it first created the Do Not Call List rules, *see* 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003), and courts have overwhelmingly agreed with that interpretation of the statute ever since, *see, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

As explained above, "the ordinary, contemporary, and common meaning" of the word

13

"call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part

I.A. And contemporary definitions of the word "message" do too—a message in 1991 was "[a]ny

notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's*

*Law Dictionary* (6th ed. 1990), https://perma.cc/MTC3-H47K (emphasis added).[3] So "call" and

"message" both describe communication with a phone, and neither differentiates between oral

and written mediums. Finally, the purpose of the DNC provisions further supports that

interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy

rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

"[A] voice message or a text message are not distinguishable in terms of being an invasion of

privacy." *Satterfield*, 569 F.3d at 954; *accord Howard*, 164 F.4th at 1124; *Mujahid*, 2025 WL

3140725, at *2; *Medvidi*, 2025 WL 2856295, at *3; *Skopos Fin., LLC*, 2025 WL 2029274, at *4.

Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were

more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

### C. The other Federal Courts in Texas and elsewhere in the Fifth Circuit that have considered this question got it right.

Consistent with the statute's text and structure, courts—particularly within the Fifth

Circuit—have overwhelmingly held that text messages qualify as calls under the TCPA.

Defendant's position would undermine that system if text messages were excluded from §

227(c)'s protections, telemarketers could simply bypass the Registry by shifting from voice calls

to texts. Luckily for consumers, the federal courts in Texas and this Circuit have gotten the

---

[3] *See also, e.g.*, *Message*, *Random House Webster's College Dictionary* (9th ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

14

analysis correct. First, Judge Crane in the Southern District of Texas conducted a comprehensive

analysis when analyzing a similar motion to dismiss earlier this year:

> The Court is aware of only one other court in this Circuit that has considered the scope of the § 227(c)(5) cause of action post-*McLaughlin*, and none that have analyzed the language directly. *See Duron v. Kings Capital Holding LLC*, No. 3:25-cv-00149-DCG, 2026 U.S. Dist. LEXIS 6340, 2026 LX 68851 (W.D. Tex. Jan. 13, 2026) (report and recommendation relying on precedent); *see also*, *Watkins v. EyeBuyDirect, Inc.*, No. 1:25-CV-00538-RP, 2025 U.S. Dist. LEXIS 167479 (W.D. Tex. Aug. 28, 2025) (analyzing the regulation at 47 C.F.R. § 64.1200(d), rather than the statute) . . . .

> The question, then, is whether the concept of a "text message" is fairly embraced by the meaning of "telephone call" in 1991. Looking to a dictionary contemporaneous with the TCPA's passage, the relevant definition of "call" was "to get or try to get into communication by telephone." This language is capacious. Thus, a plain-language reading suggests that to send a text message is to "try to get or to get into communication by telephone." . . . . there is nothing in the meaning of "telephone" that excludes the function of a text message. Remarkably relevant here is the classic case of *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987). In that case, Judge Easterbrook considered a Wisconsin statute that made certain farming property unavailable to satisfy a civil judgment, allowing a farmer to retain "one mower" and "one hay loader." Just one problem: since the law's passage in 1935, farm technology had changed considerably. Old horse-drawn "mowers" were replaced by hydraulic, tractor-mounted haybines with hay conditioners, and "hay loaders" were replaced by automatic bailing/tying machines. And yet, the court found that the new technology was embraced by the old terms. Specifically, Judge Easterbrook wrote that a "'mower' is not limited to the thing called a mower today," because "[a] statutory word of description does not designate a particular item but a *class of things* that share some important feature." Indeed, "a mower with a built-in stereo cassette deck would still be a 'mower', . . . because it would still cut the hay," yet with "a second function, entertainment, just as the haybine has a second function, crushing the hay."

> The Court finds this reasoning persuasive here. Defendant seems to define "telephone call" as "a call from a telephone as existed in 1991"—that is, *only* able to communicate by voice. But if "telephone" was as absolutely defined by its sound-transmission ability as required by that reading, it would prevent an otherwise unlawful voice call using a telephone with *any* modern features from falling under the statute. Thus, voice calls from almost every modern telephone—most of which can text, among many other capabilities—would not qualify as a "telephone call" under § 227(c)(5). . . . Just as a mower that both cuts and conditions hay is still a mower, a telephone which communicates texts and voice is still a telephone. And just as an aircraft built a hundred years from now such that it "could not have been dreamed today" can be embraced by 2012 statute regulating aircraft, so can a call from a telephone built in 2025—or 2125 for that matter—be embraced by a 1991 statute. Later meaning ascribed to words like "text message" cannot affect the Courts analysis of the original meaning of the phrase; in fact, considering the broad original meaning of "call" in 1991, society reasonably might have decided to refer to all telephone communications as "calls."

This reading is bolstered by the technology's history. First, it is known that cellphones and text-messaging services displaced pagers (or "beepers") as everyday technology. . . . . Although Plaintiff likely received the text messages at issue via a modern cellphone data messaging service, in 1991 he might very well have received messages to his pager, sent via telephone calls. If the latter is covered by the statute, why not the former? . . . At bottom, it is true that a telephone in 1991 was an instrument "for producing sounds at a distance." So is a telephone today. But that instrument may also send messages via "calls." Thus, to make a "telephone call," for purposes of § 227(c)(5), is to "to get or try to get into communication" with an "instrument for producing sounds at a distance." A text message therefore falls reasonably within the literal language of the statute. . . . .

Although the literal meaning of the phrase is clear on its own, "text may never be taken out of context." *United States v. Graves*, 908 F.3d 137, 142 (5th Cir. 2018). That is why "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 492, 135 S. Ct. 2480, 192 L. Ed. 2d 483 (2015) (quotation omitted). With this in mind, two reasons stand out as to why the subsection containing § 227(c)(5), and the broader structure of the Act, counsel reading the cause of action to include "text messages." . . . . In sum, both the original text and the context support reading § 227(c)'s cause of action to include text messages within its prohibition on violative "telephone calls" to persons on the National Do-Not-Call List. This Court declines to dismiss Plaintiff's claim for lack of capacity to sue.

*Alvarez*, 2026 WL 202930 at *3-*6 (cleaned up).

What If's motion (at 12-13) singles out *Alvarez* for criticism, asserting that Judge Crane merely identified a "capacious" or "broadest literal interpretation" of "call," rather than the single best meaning *Loper Bright* requires. That critique misreads the decision. Judge Crane did not stop at a maximally broad reading of the word "call"; he examined the contemporaneous dictionary definition of "call" and "telephone," tested that definition against the statute's structure, and confirmed his reading using the same "class of things" interpretive principle that courts have long applied when old statutory language meets new technology. *See Alvarez*, 2026 U.S. Dist. LEXIS 14155, at *10-14 (discussing *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987)). That is precisely the best meaning inquiry *Loper Bright* demands in a statute entitled to liberal construction, not, as What If suggests, an abdication of it. Nor is the analysis undermined by *Steidinger*'s contrary conclusion, given *Steidinger*'s own flawed premises, discussed below.

Following Judge Crane, another court in the Fifth Circuit adopted the same analysis in

16

*McGonigle v. Shopperschoice.com*, 2026 U.S. Dist. LEXIS 30157, at \*13-14 (M.D. La. Feb. 13, 2026). Other courts in the Fifth Circuit have unanimously followed. Indeed, Judge Love explained in the Eastern District of Texas, "As to the matter of whether text messages are covered under §§ 227(b) and (c), numerous federal courts of appeals, including the Fifth Circuit, have held that § 227(b) applies to text messages, or assumed so without deciding the issue. None has construed either provision not to cover text messages…*Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress banned them in the… TCPA.")…Naturally, this court would follow suit with respect to these provisions of the TCPA having been interpreted to cover text messages."

Finally, as Judge Torres held about a month ago, "The Court is persuaded by the reasoning of the overwhelming majority of cases confirming cell phones are residential phones for purposes of the act and more importantly, that text messages are actionable under §227(c)(5)." *Callier*, 2026 U.S. Dist. LEXIS 120642 at \*18; *see also Duron*, 2026 U.S. Dist. LEXIS 6340, at \*12. The Fifth Circuit district courts, including at least two judges in Texas, have spoken with one voice: text messages qualify as "calls" under the TCPA and are subject to the same restrictions as voice solicitations. Excluding texts from the Registry would nullify Congress's protections, allow telemarketers to exploit the dominant form of communication today, and erode consumer trust. Because the statutory text, the FCC's consistent interpretation, and precedent all confirm that texts fall within the TCPA's scope, Defendant's attempt to carve out an exception must be rejected. The Registry continues to protect numbers, not loopholes.

### D. What If's arguments for a narrower interpretation, including its reliance on Steidinger, are unpersuasive.

Defendant's contrary arguments rely on misreadings of the statute, selective quotations, and flawed interpretive assumptions. What If would have this Court interpret the Do Not Call

List provisions more narrowly, insisting that the word "call" in section 227(c)(5) can only mean a voice communication and therefore the statute categorically excludes text messages. What If leans most heavily on *Steidinger v. Blackstone Med. Servs.*, No. 25-2398, 2026 WL 2028517 (7th Cir. July 14, 2026), which affirmed the district court's decision in *Jones v. Blackstone Medical Services*, 792 F. Supp. 3d 894 (C.D. Ill. 2025), and on *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025), but none of the arguments made by What If or in those cases are persuasive.

First, *Steidinger*'s central premise, that the 1991 definition of "call" requires the communication itself to reproduce sound, misreads that very definition. The contemporaneous definition of "call" is functional: "to get or try to get into communication by telephone." *Alvarez*, 2026 U.S. Dist. LEXIS 14155, at *8 (cleaned up). That definition asks only whether a person attempted to communicate by telephone, not whether the resulting communication itself reproduced sound. The panel imported an audio requirement from the definition of the instrument—"telephone"—and then assumed, without support, that every communication accomplished by telephone must itself reproduce sound. But "telephone" identifies the means of communication; it does not transform "call" into a synonym for voice conversation. A text message is properly understood as a "call" because it is a form of communication accomplished between telephones.

Second, *Steidinger*'s reliance on the phrase "telephone solicitation," defined as the initiation of "a telephone call or message," 47 U.S.C. § 227(a)(4), to conclude that a "message" can never also be a "call" does not hold up. Section 227(b)(1)(B) itself regulates a "telephone call" made "to deliver a message," confirming that in Congress's usage "call" describes the act of initiating telephone communication and "message" describes its content. The two terms

18

overlap; they are not mutually exclusive. Congress's use of the phrase "call or message" in section 227(a)(4) simply reflects the ordinary, overlapping usage of common English words. It does not strip "call" of its ordinary meaning wherever "message" also appears in the statute.

Third, the TCPA's facsimile provisions do not support excluding text messages, as *Steidinger* suggested. Those technical standards provisions show, at most, that some text-based communications, faxes, are properly considered "messages" that are a *subset* of calls, not that all written communications fall outside the word "call." Indeed, the statute defines a "telephone facsimile machine" as equipment that transcribes text or images "from an electronic signal received over a regular telephone line," 47 U.S.C. § 227(a)(3), which if anything confirms that Congress understood messages transmitted over telephone lines to be a form of telephone call, not something categorically distinct from a "call."

Fourth, *Steidinger* cannot be squared with the settled understanding, which the panel itself acknowledged, that text messages are "calls" for purposes of section 227(b). *See supra* Part I.A (collecting Seventh and Ninth Circuit authority). A statutory term is presumed to bear a consistent meaning throughout a statute absent contrary indication. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). True, subsections (b) and (c) differ in many respects, including the conduct they regulate, the consent defenses available, and the remedies they provide, but nothing in the statute suggests that the single word "call" means something different in the two subsections.

Fifth, section 227(c)(5)'s private right of action expressly incorporates "the regulations prescribed under this subsection," 47 U.S.C. § 227(c)(5), and those regulations reach telemarketing text messages every bit as much as voice calls. *See* 47 C.F.R. § 64.1200(c); Compl. ¶ 70. Congress made compliance with those regulations an element of the private cause

19

of action; reading "call" to exclude texts would let the FCC prohibit a telemarketing text under section 227(c)'s regulations while denying the very person harmed by that text the remedy Congress attached to violations of those regulations, a mismatch Congress could not have intended.

Consider first how What If reads the word "call" in section 227(c)(5). It repeats a few basic arguments for reading that word as implicitly limited to voice calls. But all of them go about interpreting the statute wrong.

What If also insists, following *Steidinger* and the *Jones* decision it affirmed, that "call" cannot encompass text messages because in 1991 text messages did not exist. *Steidinger*, 2026 WL 2028517, at *3; *Jones*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991"). That's not how statutory interpretation works. It's true that text messaging was not mainstream in 1991, so Congress didn't have texting specifically in mind. *See Medvidi*, 2025 WL 2856295, at *2. But it is black-letter law that statutes are not "confined to the particular applications contemplated by the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315–16 (1980) (collecting cases). Instead, "statutes must be permitted to apply to technologies not in existence when a statute was drafted." *Lozano*, 702 F. Supp. 2d at 1008.

There's nothing unusual about that. "While every statute's *meaning* is fixed at the time of enactment," it is commonplace that "new *applications* may arise in light of changes in the world." *Wis. Cent. Ltd.*, 585 U.S. at 284. That's why, for example, "a 1925 statute dealing with 'news media' … appl[ies] to television." *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984). Or why a 1991 law that said "no vehicles in the park" would prohibit Cybertrucks and Priuses, not just Mustangs. *See id*. The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the

20

specific facts or technology that Congress may have had in mind in 1991." *Medvidi*, 2025 WL 2856295, at *2. The 1991 meaning of "telephone call," which "refers to both oral and written communications," is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007.

What If's argument also cannot be squared with the statute's text as a whole. Congress did not define "call" in exclusively auditory terms, and elsewhere used broader language such as "call or message" when defining "telephone solicitation." 47 U.S.C. § 227(a)(4). That broader phrasing confirms that the statute contemplates multiple forms of telephonic communication, not all of which are sound-based. Nor does the fact that text messaging technology post-dates the TCPA narrow the scope; as courts have recognized, Congress used general language applying to new technologies that inflict the same harms.

And What If's attempt to distinguish text messages on the ground that they lack sound ignores the very privacy interests the TCPA was enacted to protect. The statute targets unwanted intrusions into the home and personal sphere, and courts have consistently recognized that unsolicited text messages inflict the same nuisance and invasion of privacy as unwanted calls. A text message, like a ringing phone, demands the recipient's attention, disrupts the use of the device, and intrudes upon the recipient's seclusion. For that reason, treating text messages as "calls" under the TCPA does not create incoherence, it fulfills the statute's purpose.

Finally, What If's arguments that Congress amended the TCPA in 2018 in § 227(e) to address caller ID and spoofing are unavailing. Indeed, this argument supports Plaintiff. In 2018, Congress was operating under a *Chevron*-based regulatory framework under which then-binding FCC authority held that text messages were calls. So, with that in mind, Congress would not have had any reason to revise Section 227(c)'s statutory language unless it disagreed with the FCC's then-binding interpretation. "That Congress did not change anything about § 227(c) in the

2018 amendments can be read to represent exactly the opposite of what defendant advocates. . . . If Congress's inaction in 2018 is to be ascribed any meaning, the court interprets it as an acceptance of the existing case law and regulations that applied § 227(c) to text messages." *Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 WL 851279, at *3-*4 (N.D. Ill. Mar. 27, 2026). And Congress has not amended the TCPA since either *Loper Bright* or *McLaughlin*. *Loper Bright* allows challenges to new agency actions, but does not permit new challenges to old agency actions already deemed legal via *Chevron*. *See Garcia Pinach v. Bondi*, 147 F.4th 117, 121 (2d Cir. 2025) (holding that prior cases are subject to statutory *stare decisis*).

In short, Defendant's interpretation cannot be reconciled with the TCPA's text, structure, or purpose. The ordinary meaning of "call" at the time of enactment encompasses any attempt to communicate by telephone, including text messages, and nothing in the statute suggests that Congress intended to exclude the most common form of telemarketing communication today. Reading the statute as Defendant proposes would create internal inconsistencies, undermine the Do Not Call Registry's effectiveness, and allow precisely the type of privacy invasion Congress sought to prevent. The better—and correct—reading is the one adopted by the FCC, and the overwhelming weight of authority: text messages are "telephone calls" within § 227(c).

## II.    There is a private right of action for Plaintiff's caller ID claim.

In contending that there is no private right of action for the caller-identification regulations codified at 47 C.F.R. § 64.1601(e), Defendant relies on a scattered handful of older decisions, *Worsham v. Travel Options, Inc.*, *McDermet v. John C. Heath, Attorney at Law, PLLC*, *Meyer v. Cap. Alliance Grp.*, *Braver v. Clear Sky Fin., LLC*, *Dobronski v. SunPath Ltd.*, and *Griffin v. American-Amicable Life Ins. Co. of Tex.*, while ignoring the far more recent and more thoroughly reasoned precedent on this issue, including the decision in *Starling v.*

22

*HomeOver General Contractors*, 2026 WL 1649101, at *5 (E.D. Tex. June 8, 2026), as well as *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 575 (E.D. Pa. 2025), which itself was heavily based upon the Eastern District of Michigan's recent holding in *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 375 (E.D. Mich. 2025).

In *Selectquote*, the Eastern District undertook a comprehensive analysis of the genesis of the private right of action for caller ID claims under 47 C.F.R. § 64.1601(e). *Selectquote*, 773 F. Supp. 3d at 375. *Selectquote* represents the most comprehensive analysis of Section 1601(e) undertaken by a court to date. Since that case, *every single court* to consider a Section 64.1601(e) caller ID claim has held that there is a private right of action for violations thereof, including in the District of Oregon, where the Court held as wrongly decided and declined to follow a previous opinion holding that there was no private right of action. *Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370, at *7; *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *5 (W.D. Wash. Oct. 9, 2025); *Dobronski v. Daraujo*, No. CV 25-10169, 2025 WL 3908484, at *8 (E.D. Mich. Dec. 1, 2025); *Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 3:25-CV-05671-TMC, 2026 WL 25742, at *5 (W.D. Wash. Jan. 5, 2026); *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609, at *6 (D. Or. Feb. 23, 2026). This Court should continue to adopt that precedent and uniform followed every Court to have considered the issue from 2025 forward, holding that § 64.1601(e) must have been promulgated pursuant to the rulemaking authority in Section 227(c) of the TCPA.

Defendant also invokes *Weingrad* for the proposition that language in a regulation may invoke a private right of action Congress created, but may not create a right Congress has not. Plaintiff agrees with that framing of the inquiry, which is why the Court ruled for the Plaintiff and held that there *was* a private right of action in that case. Applying it here only confirms that

23

Plaintiff's caller identification claim is actionable: Congress created the private right of action at issue in section 227(c)(5) itself, and Plaintiff's claim rests on regulations the FCC prescribed to implement the very Do Not Call List protections that section 227(c) exists to safeguard. *Weingrad* itself applied that same framework and found a private right of action available. *Weingrad*, 2026 WL 496609, at *6.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety as to both the First and Second Causes of Action.


RESPECTFULLY SUBMITTED AND DATED this August 6, 2026.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq. (# 333687PA)
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com
>
> *Attorney for Plaintiff and the Proposed Class*


## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: August 6, 2026.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.

24