**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **RYLEIGH STARLING,** ***individually and on behalf of a class of all persons and entities similarly situated*****,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. 3:26-cv-01039- B** |
| **WHAT IF HOLDINGS LLC d/b/a C4R MEDIA CORP.,** | § | |
| **Defendant.** | § | |

**REPLY IN SUPPORT OF DEFENDANT WHAT IF HOLDINGS, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

## Table of Contents

**Page**

INTRODUCTION ..... 1

LEGAL ARGUMENT ..... 2

I. THE PRIVATE RIGHT OF ACTION UNDER SECTION 227(C)(5) DOES NOT ENCOMPASS TEXT MESSAGES. ..... 2

- A. The Opposition Fails the Original-Meaning Inquiry and Ignores Statutory Structure. ..... 2
- B. Changing Technology Does Not Change Fixed Statutory Meaning. ..... 4
- C. Other Cases cited by the Opposition do not answer the question. ..... 5
- D. FCC Policy, and Cases that Never Decided the Issue, Cannot Alter the Scope of Section 227(C)(5)'s Private Right of Action. ..... 6

II. THERE IS NO PRIVATE RIGHT OF ACTION UNDER 47 C.F.R. § 64.1601(e) ..... 8

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ....... 6

*Alvarez v. Fiesta Nissan, Inc.*,
2026 WL 202930 (S.D. Tex. Jan. 26, 2026) ....... 4, 5

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) ....... 2, 3

*Bradford v. Sovereign Pest Control of TX, Inc.*,
2026 WL 520620 (5th Cir. Feb. 25, 2026) ....... 6

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ....... 7

*Cranor v. 5 Star Nutrition*,
998 F.3d 686 (5th Cir. 2021) ....... 5

*Dilanyan v. Hugo Boss Fashions, Inc.*,
2025 WL 3549868 (C.D. Cal. Dec. 3, 2025) ....... 7

*Dobronski v. Selectquote Ins. Servs.*,
773 F. Supp. 3d 373 (E.D. Mich. 2025) ....... 8, 9, 10

*Esquivel v. Mona Lee, Inc.*,
2025 WL 3275607 (S.D. Cal. Nov. 24, 2025) ....... 7

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) ....... 5, 7

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017) ....... 3

*Howard v. Republican National Comm.*,
164 F.4th 1119 (9th Cir. 2026) ....... 5, 6

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ....... 4, 6, 7

*Lundeen v. Mineta*,
291 F.3d 300 (5th Cir. 2002) ....... 9

*McLaughlin. McLaughlin Chiropractic Assocs. v. McKesson Corp.*,
606 U.S. 146 (2025) ....... 6

*Newell v. JR Capital, LLC*,
791 F. Supp. 3d 571 (E.D. Pa. 2025) ....... 9

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ....... 7

*SEC v. Stanford Int'l Bank, Ltd.*,
112 F.4th 284 (5th Cir. 2024) ....... 7

*Starling v. Homeover Gen. Contractors*,
2026 WL 1649101 (E.D. Tex. June 8, 2026) ....... 9

*Steidinger v. Blackstone Med. Servs.*,
2026 WL 2028517 (7th Cir. July 14, 2026) ....... 5, 6, 8

*Tom v. Delancey Street Group LLC*,
2026 WL 2255107 (E.D.N.Y. Aug. 5, 2026) ....... 8, 9

*Wilson v. Skopos Fin., LLC*,
2025 WL 2029274 (D. Or. July 21, 2025) ....... 7

**Statutes, Rules & Regulations**

47 C.F.R. § 64.1601(e) ....... 1, 8, 9

47 C.F.R. § 64.1601(e)(1) ....... 8

47 U.S.C. § 227(c)(5) ....... *passim*

Fed. R. Civ. P. 12(b)(6) ....... 1

Defendant What If Holdings, LLC d/b/a C4R Media ("What If") by and through its undersigned counsel, hereby submits this reply in further support of its July 16, 2026 Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), Dkt. No. 19 (the "Motion") and in response to Plaintiff's August 6, 2026 Opposition, Dkt. No. 21 (the "Opp." or "Opposition").

**INTRODUCTION**

Plaintiff's Opposition does not dispute that the Court must determine the single best ordinary meaning, in 1991, of what it meant to receive a "telephone call" as required to invoke the private right of action under § 227(c)(5). Yet, the Opposition fails to identify a single source showing that the phrase "telephone call" was ordinarily understood in 1991 to include a written message. And it fails to rebut the evidence provided in the Motion, including the *contemporaneous* meaning of the word "telephone" that modifies the word "call" in § 227(c)(5), the 1996 Omnipoint User Manual that expressly distinguishes "telephone calls" from other communications (including text messages and emails) that could be sent and received on the handset, and the Fifth Circuit Local Rules requiring a "telephone call" to the clerk and counsel prior to filing certain emergency motions. Nothing in the Opposition or the cases it cites shows that the ordinary meaning of a "telephone call" in 1991—or at any time since—included a written communication.

Plaintiff's First Cause of Action thus fails as a matter of law and should be dismissed. Because the Opposition argues that 47 C.F.R. § 64.1601(e) is promulgated under § 227(c), the same limitation defeats the Second Cause of Action. Alternatively, the Second Cause of Action fails because a private right of action does not exist for 47 C.F.R. § 64.1601(e).

The Court should therefore grant the Motion and dismiss both claims with prejudice.

## LEGAL ARGUMENT

### I. THE PRIVATE RIGHT OF ACTION UNDER SECTION 227(C)(5) DOES NOT ENCOMPASS TEXT MESSAGES.

#### A. The Opposition Fails the Original-Meaning Inquiry and Ignores Statutory Structure.

The Opposition does not contest the rules of statutory construction set forth by the Fifth Circuit Court of Appeals and Supreme Court that are cited in the Motion (Mot. 6–9); it fails to apply them. The Opposition neither provides contemporaneous evidence of the ordinary meaning of what it meant to receive a "telephone call" nor meaningfully contests the evidence provided in the Motion. Instead, the Opposition ticks through a number of non-binding district court cases that have either decided the issue in Plaintiff's favor using flawed analyses or never addressed the issue at hand, before asserting that the ordinary meaning of "telephone call" is an attempt to communicate by telephone. (Opp. 12). But neither the Opposition nor any case it cites identifies any evidence that the ordinary meaning of receiving a "telephone call" in 1991 (or since) includes receiving a written message such as a text message. That absence is particularly telling given the ubiquity of text messaging. If "telephone call" were ordinarily understood to include text messages, one would expect the Opposition to identify examples from decades of public usage in which a text message was described as a "telephone call." It identifies none.

The Opposition spends significant energy analyzing the word "call" in Section 227(b)—a separate provision that regulates different conduct and has a different private right of action under § 227(b)(3)—instead of the phrase "telephone call" in the private right of action under § 227(c)(5) (Opp. 8–14), contrary to the Supreme Court's guidance that "[w]hen interpreting statutes, … we usually presume differences in language convey differences in meaning." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 792 (2020) (cleaned up). The Opposition's reliance on the consistent-usage canon (Opp. 9) is also misplaced because that presumption concerns "identical words" used in the

same statute, not different statutory terms or phrases like those at issue here. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). Ultimately, the Opposition assigns "call" and "telephone call" the same ordinary meaning—an attempt to communicate by telephone (Opp. 12, 22)—despite Congress's choice to use different language in different parts of the statute. That interpretation leaves the word "telephone" in § 227(c)(5) with no independent meaning.

The Opposition also ignores Congress's use of different language, including "messages" and "other transmissions," to grant the FCC and State Attorneys General broader enforcement rights than private individuals. (Mot. 10–11.) And when Congress amended § 227(e) in 2018,[1] it expressly used the term "text message." Interpreting "telephone call" to encompass text messages would collapse these distinctions and deprive Congress's different word choices of independent meaning. *See Bostock*, 590 U.S. at 792 ("As Justice Scalia explained for the Court, 'it is not our function' to 'treat alike subjects that different Congresses have chosen to treat differently.'") (internal citation omitted).

Further, there is no inconsistency between § 227(c)(3)(F) regulations regarding making or transmitting a "telephone solicitation," and § 227(a)(4)'s definition of "telephone solicitation" as the initiation of "a telephone call or message." (Opp. 19, 25.) Congress used broader language to define conduct the FCC could regulate—"telephone call or message"—but limited the private right of action in § 227(c)(5) to a person who received more than one "telephone call." That distinction reflects Congress's choice to grant broader regulatory authority than private enforcement rights, and the Court should give effect to both provisions rather than expanding § 227(c)(5) to eliminate the difference.

The Opposition incorrectly characterizes the Motion as "insisting that the word 'call' in section 227(c)(5) can only mean a voice communication and therefore the statute categorically

---

[1] The Opposition's attempt to infer congressional ratification from silence (Opp. 26-27) is particularly unpersuasive where Congress expressly added "text message" elsewhere in the same statute rather than altering § 227(c)(5)'s "telephone call" language.

excludes text messages." (Opp. 18.) But the Motion does not analyze "call" alone; rather, it uses the modifying word "telephone" to evaluate the ordinary contemporaneous meaning of "telephone call" as Congress wrote in § 227(c)(5). (Mot. 5–9.) Further, even if the phrase "telephone call" were susceptible to other interpretations, that would not change the analysis. The ordinary-meaning inquiry requires the Court to determine the single best meaning of the statutory phrase Congress enacted. *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369, 400 (2024). And that single best meaning for "telephone call," as explained in the Motion, involves communication by voice or sound.

**B. Changing Technology Does Not Change Fixed Statutory Meaning.**

The Opposition's definition of "telephone call" as any attempt to communicate by telephone has at least two other flaws. First, the definition is circular and leaves the word "telephone" undefined. The ordinary meaning of "telephone" in 1991 involved a communication by voice or sound (Mot. 6–8), and that point is undisputed. The Opposition acknowledges that "[a]t bottom, it is true that a telephone in 1991 was an instrument 'for producing sounds at a distance.'" (Opp. 16 (quoting *Alvarez*, 2026 WL 202930, *3–7 (S.D. Tex. Jan. 26, 2026)).) Instead of looking to the functionality of a telephone in 1991, the Opposition improperly looks to the functionality of a modern smartphone. (Opp. 15-16.) That is improper because "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400.

New applications of statutory terms may arise over time. For example, a voice communication placed through a cloud-based platform, transmitted over a 5G network, and received on an Apple Watch may fall within the fixed 1991 meaning of "telephone call." But any new application must fall within the meaning of the statutory term at the time of enactment. The

Opposition's definition of "telephone" impermissibly uses functionality developed after enactment to rewrite the statutory term's meaning.[2] Instead, the Court must apply the term's fixed meaning.

Second, the Opposition's modern definition lacks a limiting principle. If the phrase "telephone call" encompasses any communication made using a telephone (Opp. 9), and the meaning of "telephone" is determined by the functions of a modern smartphone, then the phrase sweeps in email messages, social media direct messages and posts, app alerts, AirDrops, Bluetooth transfers, and more. As with text messages, none of these communications is or ever was within the ordinary meaning of the phrase "telephone call." The Supreme Court has already confirmed that any such effort to "rewrite the TCPA to update it for modern technology" is a task for Congress, not the courts. *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021).

### C. Other Cases cited by the Opposition do not answer the question.

The Opposition's reliance on cases interpreting "call" or "any call" under § 227(b) does not answer the meaning of "telephone call" under § 227(c)(5). That flaw applies both to the district court decisions cited at Opposition pages 6–7 and to *Cranor v. 5 Star Nutrition*, 998 F.3d 686 (5th Cir. 2021). None interpreted the phrase "telephone call" under § 227(c)(5). Indeed, the Opposition concedes that "the Fifth Circuit has not yet squarely addressed whether telemarketing text messages constitute 'telephone calls' under 47 U.S.C. § 227(c)(5)." (Opp. 2.)

The Opposition falsely asserts that "the Ninth Circuit … has held that the DNCR provision covers text messages" (Opp. 7), citing to *Howard v. Republican National Committee*, and that the Seventh Circuit's decision in *Steidinger v. Blackstone Medical Services* "conflicts directly with the Ninth Circuit's reasoning in *Howard*." (Opp. 2. (referencing 2026 WL 2028517 (7th Cir. July 14, 2026)).) Neither statement is true.

---

[2] The Opposition provides a hay-cutting analogy from *Alvarez v. Fiesta Nissan, Inc.*, (Opp. 15-16) that misses the mark. That a modern device may perform multiple functions does not transform one function into another. Cutting hay does not become conditioning hay merely because a modern haybine can perform both functions. Likewise, a text message does not become a "telephone call" merely because a modern smartphone can perform both functions.

*Howard* analyzed the term "call" under Section 227(b)—the automatic telephone dialing system and pre-recorded voice message provision of the TCPA—not Section 227(c) or its private right of action for receipt of more than one "telephone call." 164 F.4th 1119, 1122–28 (9th Cir. 2026). The Ninth Circuit did not decide whether the phrase "telephone call" in Section 227(c)(5) carries the same meaning as "call" under Section 227(b). *Id*. at 1125–1128. Thus, *Howard* does not conflict with the Seventh Circuit's detailed analysis in *Steidinger,* concluding that a "telephone call" under Section 227(c)(5) does not include a text message. (Mot. 9.)

### D. FCC Policy, and Cases that Never Decided the Issue, Cannot Alter the Scope of Section 227(C)(5)'s Private Right of Action.

Whether the FCC may regulate text messages is distinct from the question presented here: the scope of the private right of action Congress enacted in § 227(c)(5). The FCC cannot, by regulation, provide a private right of action that Congress did not create. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.") (citation omitted). Cases that predate the United States Supreme Court's decisions in *McKesson* and *Loper Bright* and are based on analysis or assumptions about FCC policy are not dispositive. (*See* Mot. 5, 12 n.4.) Previously, courts treated FCC interpretations of TCPA provisions as binding under an understanding of the Administrative Orders Review Act, commonly known as the Hobbs Act, that was rejected in *McLaughlin*. *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146 (2025). Since *McKesson,* courts have returned to their roles of independently evaluating the meaning of statutory terms in the TCPA. For example, In *Bradford v. Sovereign Pest Control of TX, Inc.*, the Court of Appeals for the Fifth Circuit ruled that the TCPA "does not require prior express written consent" for certain automated or prerecorded telemarketing calls supported by oral consent and holding "that the FCC wrongly interpreted the TCPA when it concluded otherwise." 2026 WL 520620, *3 (5th Cir. Feb. 25, 2026).

Cases where the question of whether a text message is a "telephone call" under § 227(c)(5) was neither disputed nor decided do not constitute precedent on that question. *See SEC v. Stanford Int'l Bank, Ltd.*, 112 F.4th 284, 293 (5th Cir. 2024) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (quotation omitted). Despite that, the Opposition repeatedly relies on *Satterfield v. Simon & Schuster, Inc.* (e.g., Opp. 9, 14), a 2009 case interpreting "call" under § 227(b) that expressly noted its interpretation was "consistent with the FCC's interpretation." 569 F.3d 946, 954 (9th Cir. 2009).[3] Further, several of the Opposition's cases rely on or defer to the FCC's interpretation of the TCPA in tension with *McKesson* and *Loper Bright*.[4] Those decisions rest on error, and this Court should reject the Opposition's invitation to commit the same error.

Similarly, the Opposition suggests that the Supreme Court has deemed it an "undisputed" question that a text message qualifies as a "call" under the TCPA. (Opp. 10 *citing Campbell-Ewald Co. v. Gomez,* 577 U.S. 153 (2016).) First, *Campbell-Ewald* addressed the scope of the term "call" in Section 227(b), not "telephone call" in Section 227(c)(5). 577 U.S. at 153. Second, the Court's use of "undisputed" did not establish that the issue was "broadly understood for decades" (Opp. 11); rather, it reflected that neither party had presented the issue for decision as the Supreme Court later confirmed in *Facebook v. Duguid,* 592 U.S. 395, 400 n.2 (2021). (Mot. 12. n.3.)

[3] The Opposition relies on multiple cases rooted in *Satterfeld's* analysis that, for the same reason, fail to validate Plaintiff's position. (Opp. 7 *citing Dilanyan v. Hugo Boss Fashions, Inc.*, 2025 WL 3549868, *3 (C.D. Cal. Dec. 3, 2025) (interpreting Section 227(c) and finding "[t]he Court reads the ordinary meaning of 'telephone call' to exclude 'text message' but nonetheless finding for the plaintiff because "*Satterfield*'s conclusion that 'a text message is a "call" within the meaning of the TCPA' appears to be broad enough to control here"); *Esquivel v. Mona Lee, Inc.*, 2025 WL 3275607, *2 (S.D. Cal. Nov. 24, 2025) (erring by relying on *Satterfield*'s finding that that "a text message is a 'call' within the meaning of the TCPA" to interpret the meaning of "telephone call" within Section 227(c)).

[4] *See Esquivel,* 2025 WL 3275607 at *2 (acknowledging "FCC guidance is no longer binding on district courts" while relying entirely on FCC guidance and cases predating *Loper Bright* and *McKesson* to find text messages are actionable); *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. July 21, 2025) (finding text messages actionable under Section 227(c) because "the FCC has expanded the TCPA to apply to text messages").

This Court should honor the ordinary meaning of the phrase "telephone call" that has remained unchanged since 1991, and join *Steidinger* and the other courts holding that text messages do not satisfy § 227(c)(5)'s "telephone call" requirement. (Mot. 8–9.) Because the FAC is limited to text messages (Compl. ¶¶ 22, 28), Cause of Action I must be dismissed as a matter of law.

## II. THERE IS NO PRIVATE RIGHT OF ACTION UNDER 47 C.F.R. § 64.1601(e)

The Opposition argues "that § 64.1601(e) must have been promulgated pursuant to the rulemaking authority in Section 227(c) of the TCPA." (Opp. 23.) That is wrong; however, by asserting that conclusion, Plaintiff is necessarily asking this Court to limit the applicability of the private right of action for that regulation to the same scope as Section 227(c)(5): "telephone calls." Even if the Opposition was correct that Section 64.1601(e) was promulgated under Section 227(c) of the TCPA, nothing in Section 64.1601(e) permits the Court to expand the interpretation of "telephone calls" in 227(c) to regulate caller ID information for text messages. (Mot. 13–15.) Thus, for the reasons stated above, the text messages alleged to be at issue are not actionable, and Cause of Action II should be dismissed as a matter of law. Alternatively, this Court should find, as others have, that a private right of action does not exist to enforce the regulation.

The day before Plaintiff filed the Opposition, the United States District Court for the Eastern District of New York explained "[t]here being no controlling precedent on this question, this Court is persuaded by the majority approach, which finds there is no private right of action given § 64.1601(e)(1)'s silence on the matter." *Tom v. Delancey Street Group LLC*, 2026 WL 2255107, at *6 (E.D.N.Y. Aug. 5, 2026).[5] The Fifth Circuit (like the Second Circuit in *Tom*) has not spoken on this issue, and, like *Tom,* this Court should not introduce a private right of action.

---

[5] That decision renders false the Opposition's argument that "[s]ince that case [*Dobronski v. Selectquote*], *every single court* to consider a Section 64.1601(e) caller ID claim has held that there is a private right of action for violations thereof. . . ." (Opp. 23.) Because Plaintiff's counsel here is also counsel of record for the plaintiff in *Tom v. Delancey Street Group,* they would or should have known of that Court's assessment of "the majority approach" when the Opposition was filed.

The Parties agree that this Court "may not create a right Congress has not." (Opp. 23; Mot. 14.) Section 227(c)(5) grants a private right of action for violations of regulations "prescribed under this subsection"; however, the Opposition does not, because it cannot, cite to any language in the regulation or legislative history stating that 47 U.S.C. § 64.1601(e) was promulgated under Section 227(c). The Opposition's conclusory assertion "that § 64.1601(e) must have been promulgated pursuant to the rulemaking authority in Section 227(c) of the TCPA" (Opp. 23) is an inference—not a statutory mandate. "[P]laintiff generally bears the relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the relevant statute." *Lundeen v. Mineta*, 291 F.3d 300 (5th Cir. 2002). Plaintiff's unsubstantiated inference is not sufficient to meet that burden.

Unable to identify a statutory basis for a private right of action, the Opposition highlights *Starling v. Homeover Gen. Contractors*, a case that discusses telephone calls (not text messages) and that made an unexplained analytical leap to find that the regulation was subject to a private right of action. *See* 2026 WL 1649101, *2 (E.D. Tex. June 8, 2026) (addressing "unlawful calls"). The Opposition also relies on *Newell v. JR Capital*, *LLC*, 791 F. Supp. 3d 571, 577 (E.D. Pa. 2025), but *Newell* also did not address whether a plaintiff alleging only text messages satisfies § 227(c)(5)'s separate statutory requirement of receiving more than one "telephone call."

Finally, the Opposition claims *Dobronski v. Selectquote Ins. Servs.*, represents "the most comprehensive analysis of the genesis of the private right of action for caller ID claims under 47 C.F.R. § 64.1601(e)." (Opp. 23). Setting aside the *Tom* Court's observation that "the majority approach" rejects that conclusion, the *Dobronski* court actually offered a helpful assessment of why text messages are a poor fit for regulation under Section 227(c), stating: "The question here is not whether courts should *imply* or 'create' a right of action for § 64.1601(e). It is instead whether, as a matter of textual interpretation, § 64.1601(e) falls within the scope of

an *express* cause of action that Congress has already created." 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025). Nothing in the regulation provides an "express cause of action" for a caller ID claim, much less a caller ID claim for a text message. And Section 227(c)(5)'s private right of action for a "telephone call" is consistent with that conclusion.

This Court should reject Plaintiff's attempt to expand the regulations to provide for an unwarranted private right of action.

## CONCLUSION

For the reasons stated herein and in the opening brief, the Court should dismiss both causes of action as a matter of law. Because no amendment can cure the legal deficiencies, the Court should dismiss both claims with prejudice.

Respectfully submitted,

*/s/ Paul A. Rosenthal*

PAUL A. ROSENTHAL (admitted pro hac vice)
FAEGRE DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey
(973)549-7000 (Telephone)
paul.rosenthal@faegredrinker.com

SARA E. INMAN (24073098)
FAEGRE DRINKER BIDDLE & REATH LLP
2323 Ross Ave., Suite 1700
Dallas, Texas 75201
(469) 357-2500 (Telephone)
sara.inman@faegredrinker.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Paul A. Rosenthal*
Counsel for Defendant