UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RYLEIGH STARLING,** ***individually and on behalf of a class of all persons and entities similarly situated,*** | § | |
| **Plaintiff,** | § | |
| v. | § | **CIVIL ACTION NO. 3:26-CV-1039-B** |
| **WHAT IF HOLDINGS LLC d/b/a C4R MEDIA CORP.,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant What if Holdings LLC d/b/a C4R Media Corporation ("What If")'s Motion to Dismiss (Doc. 18). For the reasons set forth below, the Court **GRANTS** What If's Motion.

## I.

## BACKGROUND

Plaintiff Ryleigh Starling ("Starling") filed this class action lawsuit in the U.S. District Court for the District of Oregon on February 22, 2026, alleging that What If violated portions of the Telephone Consumer Protection Act ("TCPA") (codified at 47 U.S.C. § 227).[1] Doc. 1, Compl., ¶¶ 70, 77. Starling's first claim relies on 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c). *Id.* at 11-12. She alleges that What If sent nonconsensual "telemarketing text message calls" to "class members

[1] No class has yet been certified, and no motion has been made to certify a class in this case. *See* Doc. 17, Order.

listed on the National Do Not Call Registry." *Id.* at ¶¶ 3, 22-23. Starling's second claim relies solely on 47 C.F.R. § 64.1601(e)(1), an FCC regulation requiring telemarketers to transmit caller-identification information. *Id.* at ¶¶ 13-14. Starling alleges that What If "violated the TCPA by [initiating] multiple telemarketing calls . . . without proving a [caller ID] that allowed any individual to make a do-not-call request during regular business hours." *Id.* at ¶ 77; 47 C.F.R. § 64.1601(e)(1). Both claims rely solely on the receipt of at least twenty-four unwanted text messages; Starling does not allege receiving any other communication from What If. Doc. 1, Compl., ¶¶ 20-24, 41.

Per the parties' mutual agreement, Doc. 6, Unopp. Mot., the case was transferred to this Court on April 2, 2026. Doc. 8.[2] Pursuant to Rule 12(b)(6), What If now moves to dismiss Starling's Complaint, asserting that Starling "fail[ed] to state a valid claim for relief." Doc. 19, Mot. Br., 1 (citing FED. R. CIV. P. 12(b)(6)). First, What If argues that Starling cannot state a cause of action under § 227(c) because the subsection "provides a cause of action only to a person who has received more than one 'telephone call,'" and the alleged text messages are not "telephone call[s]." *Id.* Second, What If argues that Starling's claim regarding alleged violations of caller-identification regulations fail because the regulation was promulgated under § 277(d), which unlike § 227(c), provides no private right of action. *Id.*

Starling responded on August 6, 2026, Doc. 21, Pl.'s. Resp., and What If replied to the response on August 20, 2026, Doc. 22, Def.'s Reply. The Court considers the arguments below.

---

[2] Starling's "817-area code number is associated with the Northern District of Texas" and "a substantial portion of the calls at issue were received to that number." Doc. 6, Unopp. Mot., 1-2.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move for dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Causes of action may be dismissed if the "private right of action [in the statute] is unavailable" to the plaintiff. *Aspire Commodities, LP v. GDF Suez Energy N. Am., Inc.*, 2015 WL 500482, at *5 (S.D. Tex. Feb. 3, 2015), *aff'd sub nom. Aspire Commodities, L.P. v. GDF Suez Energy N. Am., Inc.*, 640 F. App'x 358 (5th Cir. 2016).

## III. ANALYSIS

Starling's claims rely on the inclusion of "text messages" as "telephone calls" under § 227(c)(5) of the TCPA. As to Starling's first cause of action, neither the ordinary meaning of "telephone call" nor statutory context support including text messages as telephone calls in § 227(c)(5). As to Starling's second cause of action, she cannot bring a claim alleging a violation of

47 C.F.R. § 64.1601(e)(1) because, even if the regulation was promulgated under § 227(c)(5), her receipt of unwanted text messages does not make her eligible to utilize the subsection's cause of action per the Court's textual analysis of the subsection. The Court considers these causes of action below.

A. *Starling's First Cause of Action Fails.*

First, What If argues that text messages are not included in the definition of a "telephone call" in § 227(c)(5) because (1) "[t]he ordinary public meaning of 'telephone call' as used in [the subsection] did not include written messages at the time it was enacted," (2) the "structure" and "surrounding provisions [of § 227(c)(5)] confirm[] that its private right of action does not extend to text messages," (3) FCC guidance should not bind this Court, and (4) "[c]ases to the contrary are not persuasive." Doc. 19, Mot. Br., 5, 7, 9, 12. This Court agrees on all four points.

Section 227(c)(5) states that "[a] person who has received more than one *telephone call*" violating the regulations within a 12-month period generally has a private right of action. 47 U.S.C. § 227(c)(5) (emphasis added). What If and Starling dispute the meaning of "telephone call" as used in this provision. Because Congress could not have addressed whether text messages were telephone calls when the statute was enacted,[3] the text of § 227(c)(5) is silent as to whether a text message is a call. *See Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 (N.D. Ill. 2016), *aff'd on other grounds*, 855 F.3d 793 (7th Cir. 2017).[4]

[3] The first text message was sent in 1992, a year after the TCPA's passage. *See* Tomasz Frymorgen, *The humble text message is now 25 years old – Happy Birthday SMS!*, BBC NEWS (Dec. 4, 2017), https://www.bbc.com/bbcthree/article/d1c23412-3043-429e-a00b-5d997a2f6f83 [https://perma.cc/654Z-A248].

[4] Another TCPA subsection defines "text message" for the purposes of that subsection. *See* 47 U.S.C. § 227(e)(8)(c). As discussed below, later amendments to the TCPA included provisions that expressly refer to "text messages" rather than "telephone calls."

Thus, the Court turns to methods of statutory interpretation to determine the meaning of "telephone call" within § 227(c)(5). *See id.*

1. The Ordinary Public Meaning of a Telephone Call Does Not Include a Text Message.

The "starting point," *INS v. Phinpathya*, 464 U.S. 183, 189 (1984) (citation omitted), and "most basic principle of statutory construction" is that words in a statute "are to be given their ordinary meaning" unless indicated otherwise. *Thompson v. Goetzmann*, 337 F.3d 489, 497 (5th Cir. 2003). There is an "important distinction between how a word *can* be used and how it ordinarily *is* used," so the "meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *United States v. Lyckman*, 235 F.3d 234, 238 (5th Cir. 2000) (emphasis in original) (citation omitted).

What If and Starling both cite dictionaries to determine the ordinary meaning of "telephone call" in 1991. Doc. 19, Mot. Br., 6-7; Doc. 21, Pl.'s. Resp., 12-13. What If relies on dictionary definitions of the noun "telephone" containing a sonic element. Doc. 19, Mot. Br., 6; *Telephone*, *Merriam-Webster's Collegiate Dictionary* 1207 (10th ed. 1993) (defining telephone as an instrument for "reproducing sounds at a distance"); *see also Telephone*, *Oxford English Dictionary* 728 (2d ed. 1989) (defining telephone as "[a]n instrument, apparatus, or device for conveying sound to a distance");[5] *Telephone*, *Webster's Ninth New Collegiate Dictionary* 1212 (1991) ("an instrument for reproducing sounds at a distance" and "one in which sound is converted into electrical impulses for transmission by wire"). Accordingly, What If argues that text messages fall outside the meaning of "telephone call" under § 227(c)(5) because text messages lack a sonic element.

[5] No definition of "telephone" in this edition of the Oxford Dictionary lacked a reference to sound. *See Telephone*, *Oxford English Dictionary* 728-29 (2d ed. 1989).

In contrast, Starling relies on definitions of the verb "call" which focus on communication by telephone. Doc. 21, Pl.'s Resp., 12; *e.g.*, *Call*, *Merriam-Webster's Ninth New Collegiate Dictionary* 161 (9th ed. 1991) ("[T]o get or try to get into communication by telephone."). Starling takes this definition literally to mean that any communication involving a telephone—including a text message—would fall within the meaning of a "telephone call" under § 227(c)(5). However, the Court is not persuaded by this argument.

Even adopting Starling's broad "communication by telephone" definition of "call," the Court cannot ignore the modifier "telephone" before "call" in § 227(c)(5). Nor can it disregard the more restrictive ordinary public meaning of "telephone" that Starling's proffered definition itself invokes. The standard definitions of "telephone" at the time of the TCPA's passage invoke voice and/or sound, as cited above. And because Congress intended the type of call referenced to be a "*telephone* call", the most natural reading of § 227(c)(5) requires a "telephone call" to include a sonic component.

Even if the dictionaries were indeterminate, the ordinary public meaning of "telephone call" supports What If's argument. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020) (holding that a court "normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment"). Starling asks this Court to consider that "[w]hile every statute's meaning is fixed at the time of enactment," it is commonplace that "new applications may arise in light of changes in the world." Doc. 21, Pl.'s. Resp., 20 (emphasis omitted) (citing *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018)). Based on this argument, Starling urges the Court to hold that a private right of action for unwanted receipt of text messages would simply be a new application of the statute's protection against unwanted telephone calls.

Nevertheless, whether in 1991 or today, the ordinary public usage of the noun "telephone call" is not synonymous with nor does it encompass "text message." A person asking for a "telephone call" will not expect to receive a written message, or text. In fact, one will often utilize text messaging over making a telephone call precisely to avoid intruding on another's privacy—exactly the purpose which courts routinely emphasize was at the core of the TCPA's passage.[6] Because courts look to how a word *is* ordinarily used over how it *can* be used, and there is an auditory, vocal component in the dictionary definitions, this Court concludes that dictionary and ordinary meaning in 1991 support distinguishing text messages from telephone calls. *See Lyckman*, 235 F.3d at 238; *Mullin v. Doe*, 609 U.S. 324, 342 (2026) ("We are wary of giving common terms technical meanings. . . . [W]ithout strong proof of [departure from ordinary meaning], commonly used terms should be given their common meaning." (citation omitted)).

2. Surrounding Statutory Text Supports Exclusion of Text Messages from § 227(c)(5).

Although ordinary meaning sufficiently distinguishes text messages from calls, additional statutory context also supports the Court's reading. In various portions of the TCPA, Congress amended the statutory language to add references to text messages. And "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citing *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

[6] *See, e.g., Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1126-27 (9th Cir. 2026) (describing the purpose of the TCPA as protecting privacy and seclusion rights).

Here, Congress repeatedly amended the TCPA in subsections outside of § 227(c)(5) to include text messages—separate from calls. In 2018, Congress added "or text messaging service" after the clause "in connection with any voice service" in § 227(e)(1). Pub. L. No. 115-141, 132 Stat. 1091 (2018). It did the same for §§ 227(e)(8)(A) and (B). *Id.* (changing language from "telecommunications service or IP-enabled voice service" to "voice service or a text message sent using a text messaging service"). In 2019, Congress amended the TCPA again, adding in part § 227(i)(1) which differentiates between a "call made or a text message sent" and "a call or text message" in subsections (A) and (B). Pub. L. No. 116-105, 133 Stat. 3274 (2019).

In contrast to the language Congress used in these amendments, Section 227(c)(5) only provides a private right of action for a "person who has received more than one telephone call within any 12-month period." Because courts cannot read a statute in a way that negates the effect of differing terms, telephone calls must be distinct from text messages. *See United States v. Limon*, 159 F.4th 327, 336 (5th Cir. 2025) (holding that "courts are obliged to give effect, if possible, to every word Congress used" to avoid the canon against surplusage (internal quotations omitted) (citation omitted)). Thus, based on Congress's omission of any reference to text messages in this subsection, this Court cannot conclude that Congress intended to extend § 227(c)(5)'s private right of action to those who received text messages. *See Russello*, 464 U.S. at 23.

Further, other subsections of § 277(c) refer to "telephone solicitation," which is defined as "the initiation of a telephone call *or message*." 47 U.S.C. § 227(a)(4) (emphasis added); *see also id.* § 227(c)(3) (discussing the creation of a national database of individuals "who object to receiving telephone solicitations"); *id.* § 227(c)(1) (setting out a rulemaking requirement "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations

to which they object"). Yet, § 227(c)(5) also lacks any reference to "telephone solicitation," which may have broadened the private right of action beyond voice calls. Following Supreme Court precedent, this Court then presumes that Congress, by choosing to use other terms that encompass text messages in other parts of the TCPA, intentionally differentiated the meaning of text messages from telephone calls. *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457-58 (2022) (applying the meaningful-variation canon to hold that where Congress uses one term in one place, and a different distinct term in another, the Court presumes that the different terms mean different things).

Lastly, Starling argues that text messages are telephone calls under § 227(c) of the TCPA because some courts have found so under § 227(b), a neighboring provision. Doc. 21, Pl.'s. Resp., 9. And because "absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute," Starling urges the Court to follow this "consensus meaning" with respect to § 227(c)(5). *Id.* (citing *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017)). In other words, because § 227(b)(1) has been held to refer to text messages despite only using the language "telephone call" or "call," Starling contends that the same meaning should apply to § 227(c)(5). Doc. 21, Pl.'s. Resp., 9.[7]

Plaintiff cites to two cases in support from the Seventh and Ninth Circuits, respectively. *Id.* (citing *Warciak v. Subway Rests., Inc.*, 949 F.3d 354 (7th Cir. 2020) and *Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026)). Both cases are inapposite. The Seventh Circuit in *Warciak* incorporated without discussion the Supreme Court's statement in *Campbell-Ewald* that a "text message . . . it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." 949

[7] The Court addresses in further depth cases cited by Starling on the §§ 277(b) vs. (c) comparison in Part III.A.3 of this opinion.

F.3d at 356 (7th Cir. 2020). As discussed below, the *Campbell-Ewald* court's statement is taken out of context: the issue of whether texts were telephone calls was "undisputed" by the parties, and the Supreme Court did not analyze the text of the TCPA in its conclusion. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2 (2021).

Further, the Ninth Circuit's holding in *Howard*—that text messages were telephone calls—relied on the court's own precedent, *Satterfield v. Simon & Schuster, Inc.*, in which the court explicitly gave *Chevron* deference to the FCC's construction of § 227(b). *Howard* 164 F.4th at 11123 (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). The *Howard* court acknowledged that *Satterfield* "framed [its] holding . . . in terms of the then-applicable deference required to be given to the FCC's construction," but then held that the analysis would come out the same way post-*Loper Bright* because of the definition of a call, which the court took to mean simply an attempt to communicate by telephone. *Id.* at 1123-24. In upholding *Satterfield*, the *Howard* court does not undertake an attempt to find the ordinary public meaning of a "telephone call" under the TCPA. *Id.* Thus, this Court is not persuaded by the reasoning in either of the cited cases.

In addition, Starling's own argument regarding consistent meaning works against her interpretation of the statute. Starling cites *Henson* for the proposition that words used in a statute are presumed to bear a consistent meaning throughout the statute. Doc. 21, Pl.'s. Resp., 9 (citing *Henson*, 582 U.S. at 85). But as the Court discussed above, Congress differentiated between text messages and telephone calls when amending other portions of the TCPA. And when it amended the TCPA in 2019, Congress did define "text message" as a message which "does not include a real-time, two-way voice or video communication"—in other words, a telephone call. Pub. L. 115-141,

132 Stat. 1091-92. Accordingly, the Court cannot conclude that the consistent meaning of a telephone call in the TCPA includes text messages.

Based on ordinary meaning, surrounding statutory context, and lack of persuasive authority holding otherwise, the Court concludes that the best reading of § 277(c) is that plaintiffs may sue for unwanted telephone calls, but not unwanted text messages.

3. Agency Interpretation Runs Contrary to Original Public Meaning and is Not Binding.

Absent clear textual guidance, Starling urges this Court to follow the FCC's interpretation of § 227(c) which includes texts messages within the meaning of telephone calls. Doc. 21, Pl.'s. Resp., at 10-11.

In 2024, the Supreme Court decided *Loper Bright*, overruling *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). *Chevron* asked courts, when reviewing ambiguous statutes, to not "impose [their] own construction on the statute . . . [but to ask] whether the agency's answer is based on a *permissible* construction of the statute." 467 U.S. at 842-43 (emphasis added).

Now, under *Loper Bright*, courts cannot "declar[e] a particular party's reading 'permissible'"; instead, courts are directed to "use every tool at their disposal to determine the *best* reading of the statute and resolve the ambiguity." 603 U.S. at 400 (emphasis added). "That is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'" *Id.* (quoting *Wisconsin Central Ltd.*, 585 U. S. at 284 (emphasis omitted)). Further, while an agency's interpretation may inform a court's reading, "an agency's interpretation of a statute cannot bind a court" as it did under *Chevron*. *Id.* at 374 (quotation omitted); *Chevron*, 467 U.S. at 843. In fact, the best reading of an ambiguous statute is "the reading the court would have reached if no agency were

involved." *Id.* at 400 (quotation omitted). Thus, under *Loper Bright*, the Court need not give deference to the FCC's interpretation of the statute here.

The FCC interpreted part of the TCPA to mean that "*any call* . . . to any wireless telephone number" is unlawful, "encompass[ing] both voice calls and text calls . . . for example, short message service (SMS) calls." *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (emphasis in original). Notably, this interpretation appears in Part XI of the FCC's guidance, covering wireless telephone numbers under § 227(b)(1), not § 227(c). 18 F.C.C. Rcd. at 14115 n.603.

Even if the regulation did refer to § 227(c), *Loper Bright* held that courts are not bound by agency interpretation when interpreting statutes. *See* 603 U.S. at 374. "The better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes . . . [a]nd to the extent that Congress and the Executive Branch may disagree with how the courts have performed that job in a particular case, they are of course always free to act by revising the statute." *Loper Bright*, 603 U.S. at 403. For these reasons, and because the ordinary meaning and context point the other way, this Court finds the FCC guidance unpersuasive and declines to follow it, concluding that text messages are excluded from the meaning of "telephone call" in § 227(c).

4. <u>Cases to the Contrary are Inapposite.</u>

As both parties concede in their briefing, "[n]either the Supreme Court nor the Fifth Circuit Court of Appeals has held whether a 'telephone call'" includes a text message under § 227(c). Doc. 19, Mot. Br., 12; Doc. 21, Pl.'s. Resp., 8. However, Starling suggests that the Supreme Court confirmed in *Campbell-Ewald Company v. Gomez* that "text messages are 'calls'" under the TCPA. Doc. 1, Compl., ¶ 27 (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (noting that "[a]

text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii))). But Starling's reading of *Campbell-Ewald* is misguided. The Court only "assume[d] that [text messages are calls] without considering or resolving that issue" not because it was obvious, but because it was undisputed between the parties. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2 (2021) (expressly noting that the Court was not "considering or resolving" the issue of whether text messages were encompassed by § 227(b)). Further, *Campbell-Ewald* addressed § 227(b), not (c). 577 U.S. at 156. Therefore, *Campbell-Ewald* does not provide guidance as to the meaning of "telephone call" under § 227(c).

This Court recognizes a growing split between district courts as to whether text messages are "telephone calls" under § 227(c). *See, e.g.*, *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 540 (7th Cir. 2026) (holding that § 227(c)(5) "does not apply to text messages"); *but see Sagar v. Kelly Auto. Grp., Inc.*, No. 21-CV-10540-PBS, 2021 WL 5567408, at *5 (D. Mass. Nov. 29, 2021) (holding otherwise).[8] Starling cites to opinions from district courts within the Fifth Circuit holding § 277(c) to encompass text messages in its definition of telephone calls. *See, e.g.*, *Duron v. Kings Cap. Holding LLC*, No. 3:25-CV-00149-DCG, 2026 WL 319779, at *6 (W.D. Tex. Jan. 13, 2026), *report and recommendation adopted*, No. EP-25-CV-00149-DCG, 2026 WL 316037 (W.D. Tex. Feb. 5, 2026); *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-CV-00343, 2026 WL 202930, at *1 (S.D. Tex. Jan. 26, 2026).

---

[8] The Court is by no means alone in the opinion it holds today. *See, e.g.*, *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811-TWT, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026) (collecting cases in the Eleventh Circuit holding that text messages are not telephone calls under § 227(c)(5)); *Bronstin v. Happy Cabbage Analytics, Inc.*, No. 1:25-CV-01083, 2026 WL 3257600, at *6 (M.D. Pa. Oct. 29, 2026) (holding that the majority of courts that found texts to be calls under § 227(c)(5) relied on pre-Loper Bright authority); *Lowrey v. Twilio, Inc.*, No. 6:25-CV-00116, 2026 WL 2958730, at *6 (W.D. Va. Oct. 1, 2026) (holding that the ordinary meaning of telephone call does not include texts under § 227(c)(5)); *Brown v. Hursh Grp., LLC*, No. 26-CV-00185-NRN, 2026 WL 2906613, at *3 (D. Colo. Sept. 28, 2026) (same); *Card v. R.J. Reynolds Tobacco Holdings, Inc.*, No. 1:26-CV-433, 2026 WL 2673068, at *3 (M.D.N.C. Sept. 3, 2026) (same).

However, this Court concludes that the reasoning in these cases is unpersuasive for the reasons discussed below.

For example, *Duron*'s holding relies solely on being "consistent with numerous district court decisions" and the FCC's regulations. *Duron*, 2026 WL 319779 at *5. The court did not engage in textual or statutory analysis of § 227(c). *See id.* Yet, per *Loper Bright*, courts must come to the best interpretation of a statute independently. *See* 603 U.S. at 371 (ruling that "the role of the reviewing court . . . is, as always, to independently interpret the statute"). Solely relying on consistency with other court opinions and/or agency interpretation without insight into the text of the statute does not yield independent interpretation. Further, several cases cited in *Duron* predate *Loper Bright* and rely on FCC interpretations as binding, which is no longer the current law. *Duron*, 2026 WL 319779 at *5 (citing *Sagar*, WL 5567408 at *4).

Even within the post-*Loper Bright* cases cited in *Duron*, the courts largely rely on "the purpose and context of the TCPA," "consisten[cy] with guidance from the FCC," and "consisten[cy] with numerous decisions by other district courts." *See id.*; *e.g.*, *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *2-3 (N.D. Ill. Nov. 10, 2025). And in one of the rare cases that considered ordinary meaning, the court erroneously relied not only on the broad definition of "call" that Starling urges the Court follow, but from a dictionary published in 2002—more than a decade after the TCPA was enacted.[9] *Mujahid*, 2025 WL 3140725 at *2 (defining "call" as "to communicate with or try to get into communication with a person by a telephone" (citation omitted)). Moreover, the

[9] The court in *Mujahid* acknowledges that words in a statute should be "interpreted as taking their ordinary, contemporary, common meaning," yet inexplicably relies on a 2002 definition of call within the same paragraph. *Mujahid*, 2025 WL 3140725, at *2 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

*Mujahid* court relied on this broad understanding of "call" without considering the sonic element implied by "telephone" in this very definition it holds as determinative. *Id.*

In sum, many cases holding that texts count as telephone calls fail to conduct an independent textual analysis of § 277(c) as required by *Loper Bright.* Moreover, the Court is not persuaded by the minority of cases that do conduct an independent textual analysis for the reasons discussed above. Accordingly, the Court declines to follow the non-binding cited authority.

For the reasons stated above, the Court finds that Starling's first cause of action fails to state a claim under § 277(c).

B. *Starling's Second Cause of Action Fails.*

Second, What If argues that Starling's reliance on 47 C.F.R. § 64.1601(e) to allege a failure to "display the requisite caller identification information" is without merit because § 64.1601(e) "was promulgated by the FCC pursuant to § 227(d), which does not provide a private right of action." Doc. 19, Mot. Br., 13-14. Section 64.1601(e) states that "[a]ny person or entity that engages in telemarketing . . . must transmit caller identification information." Starling responds that "§ 64.1601(e) must have been promulgated pursuant to the rulemaking authority in Section 227(c) of the TCPA," which does have a private right of action. Doc. 21, Pl.'s. Resp., 23. It is undisputed between the parties that § 227(d) does not provide a private right of action while § 227(c) does, so the issue is whether § 64.1601(e) was promulgated under subsection (d) or (c).

An agency may invoke a private right of action created by Congress, but it may not create a right that Congress has not. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). Courts are split on whether § 64.1601(e) was promulgated under § 227(c) which provides a private right of action. *See, e.g.*, *Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F.

App'x 165 (4th Cir. 2017) (finding that although "it is not clear whether § 64.1601(e) is promulgated under either subsection *b* or subsection *c*," § 64.1601(e) appears to support enforcement under subsection (c)); *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 582 (E.D. Pa. 2025) (finding that "under [§ 227(c)], there is a private cause of action to enforce violations of § 64.1601(e)"); *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025) (concluding that "§ 64.601(e) was promulgated to enforce 47 [U.S.C.] § 227(c)").

Here, because Starling only alleges receipt of text messages, the Court will not consider which subsection of the TCPA the FCC promulgated § 64.1601(e) under because her claim fails regardless. If § 64.1601(e) was promulgated under § 227(d), there would be no private right of action to sue; if it was promulgated under § 227(c), then Starling's claim fails because she only received texts, not telephone calls. Thus, Starling's second claim fails.

## IV. CONCLUSION

Because the Court holds that text messages are not telephone calls under the TCPA, Plaintiff Starling's claims fail to state a claim as a matter of law. To the extent that Starling wishes to amend her complaint to allege facts beyond unwanted receipt of text messages, the Court grants leave to amend by or before December 1, 2026.[10] For the above reasons, the Court **GRANTS** What If's Motion to Dismiss (Doc. 18). Thus, Starling's Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

**SIGNED: November 16, 2026.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

[10] Amending the complaint to attempt to state a claim under § 227(c)(5) based on receipt of text messages rather than telephone calls would be futile under this opinion. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).